Teunis Slingerland *vs.* Teunis S. Slingerland.

April 21, 1891.

Specific Performance—Complaint — Proof of Partly-Performed Oral Agreement—Variance.—In an action to compel the specific performance of an agreement to convey real estate, a complaint alleging such an agreement, without stating whether it was written or oral, and alleging also such a part-performance as would take an oral agreement out of the statute of frauds, is sufficient to justify the relief sought, upon proof of a partly-performed oral agreement. This is not a variance from the pleading.

**Witness Deceased since Former Trial—Proof of his Testimony by Settled Case.**—A witness in a former trial having died, his testimony, as previously given, may be proved in a subsequent trial of the same action by a "case" settled, allowed, and certified as prescribed by statute, as containing all the evidence produced at such former trial.

**Evidence as to Collateral Facts held Properly Excluded.**—Evidence of collateral facts only remotely bearing on the issue is to be received with caution. The question at issue being whether, in consideration of the dismissal of several pending actions, prosecuted by the plaintiff against the defendant, the latter had made an express agreement to convey certain land to the former, *held*, that the court was justified in refusing to receive proof going to the merits of such several actions, and bearing upon the probability that the plaintiff would or would not have recovered therein.

**Findings held Sustained by Evidence.**—Evidence *held* sufficient to justify the finding of the court as to the fact of an agreement to convey specific land in consideration of the dismissal by the proposed grantee of certain pending actions.

**Contract—Consideration.**—Such an agreement is not an agreement for a *gift*.

Appeal by defendant from an order of the district court for Dodge county, *Severance*, J., presiding, (before whom, acting for the judge of the 5th district, the action was tried, without a jury,) refusing a new trial.

*Wilson & Bowers* and *Chas. C. Willson*, for appellant.

*Geo. B. Edgerton, B. W. Eaton,* and *Davis, Kellogg & Severance,* for respondent.

DICKINSON, J.[1] This is a second appeal in this action, which is prosecuted to compel the specific performance of an alleged agreement to convey real estate. The report of the case on the former appeal found in 39 Minn. 197, (39 N. W. Rep. 146,) discloses the nature of the alleged agreement, the relation of the parties, and the circumstances, so nearly in accordance with the case as it is now presented that we do not deem it necessary to make a general restatement of the facts as shown by the evidence, and as found by the

[1] Vanderburgh, J., took no part in this case.

court, at the second trial. The court found the fact of the agreement substantially as set forth in our opinion above cited, and ordered it to be specifically performed. This appeal is by the defendant from an order refusing a new trial.

1. The appellant should not prevail on the point that the court should have granted his motion for judgment when the plaintiff rested his case, on the ground that no written contract had been shown. It may be conceded, without now so deciding, that a complaint in such an action, alleging an agreement or contract to convey real estate, without also stating facts in the nature of part-performance such as would take the agreement, if it were made orally, out of the operation of the statute of frauds, would be insufficient to allow proof of such part-performance, and that in such a case the plaintiff could recover only by showing a contract legally valid when made. But this complaint set forth specifically such a performance of the alleged agreement as would justify the enforcement of specific performance of it, (see former decision above cited,) though it were made orally, as in fact it was. The complaint would have been good, and proof of part-performance would have sustained a recovery, if it had specifically stated that the agreement sought to be enforced was made orally. It is none the less good, and the proof of part-performance of no less effect, from the fact that the complaint does not state whether the agreement was oral or in writing. The proof made by the plaintiff of an oral agreement and of partial performance was within the allegations of the complaint. There was no material variance. The defendant was not entitled to judgment merely because the evidence failed to establish *all* of the facts alleged. It was enough that such facts were shown, within the allegations of the complaint, as to justify the relief sought.

2. On the former trial one Peter Mantor testified as a witness. After that trial a case was made and settled, and certified by the judge who tried the case to contain all the evidence given on that trial. This was filed in the clerk's office as the "case," or, as we may say, as the record of the case, presented at that trial. At the trial which we are now reviewing, it having been shown that Mantor had died, the plaintiff offered in evidence the testimony of Mantor as set forth

in the case on file, and it was read as evidence. It was material to the issue. The admission of this evidence is assigned as error, not upon the ground that what the witness had testified to on the former trial might not be proved as evidence in this trial, but on the ground that the "case" was not competent proof of the fact sought to be shown. We think that the case was competent proof, *prima facie*, of the testimony of the witness. It was a *record* in the court of that testimony, made in a manner prescribed by statute, and allowed and authenticated by the court, in accordance with the statute, as containing *all* the evidence produced at the trial. It was thus made for the very purpose of showing the evidence which had been presented on the trial. It was a record in this very action between these parties. We are to presume that both parties participated in the preparation and settlement of the case, for the statute contemplates and provides for this. It is to be considered, too, that where the evidence has been taken by a stenographic reporter, as appears to have been done in this case,—such reporters acting under the sanction of an oath, and being required to take down in full the questions put to witnesses and the answers given by them,—the means are afforded to the parties and to the court to present in a case the testimony of witnesses more completely and accurately than it could ordinarily be done by the mere recollection of those who may have heard the testimony. We think there is no good reason why a record of all the testimony, made, allowed, and authenticated in accordance with the statute, should not be accepted as *prima facie* evidence of the testimony of a witness on a former trial, who has since died. *Wilson* v. *Noonan*, 35 Wis. 321; *Baylor* v. *Smithers*, 1 T. B. Mon. 6; *Cantrell* v. *Hewlett*, 2 Bush, 311; and see *Brown* v. *Eaton*, 21 Minn. 409.

3. The court refused to receive testimony offered by the defendant to show the value of the claims of the plaintiff against the defendant, and involved in the several actions, the settlement or dismissal of which is relied upon as the consideration for the alleged agreement to convey the land in question. The nature of those actions, and of the matters in issue therein, appeared from the admissions in the pleadings in this action. The evidence offered was directed to the merits of those several actions. If the defendant had a right to

introduce such evidence to show that the plaintiff had no right to recover in the several actions referred to, and hence that he probably would not have recovered, the plaintiff, on the other hand, would have been equally entitled to present evidence to sustain his right of recovery in such actions; and the result would be that, in the trial of this action to enforce the specific performance of an alleged express agreement to convey land, the court would be called upon to try and determine the issues in five other actions wholly collateral to this, in order that the *probability* of the defendant having made the express agreement alleged might be the better considered. We think that the court did not err in refusing to allow such proof. Evidence of this collateral nature, only remotely bearing upon the issue, is always to be received with caution, because of the practical inconvenience and difficulty resulting from drawing in such collateral issues, which the parties may be supposed to be unprepared to try. But the peculiar circumstances of this case justified the refusal to enter into the trial of the merits of those actions. Taking the whole testimony, that of the defendant as well as of the plaintiff, it is very apparent, as was said in the opinion on the former appeal, that the transaction under investigation was not based on ordinary considerations of value. The circumstances, the relation of the parties, the nature of the controversies, and the testimony of the defendant himself, make it apparent that considerations of the relative value of this land, and of the causes of action in the several suits prosecuted by the son against him, had very little influence upon his conduct in this matter. If it were conceded that the son was not likely in those actions to recover $1,000, or anything, and that this land was worth more than $30,000, as the evidence tends to show it was, it could have had very little bearing on the question whether the defendant would have been likely to agree to convey this land to his son, if he would dismiss those actions and get married. He was already advanced in years, and the plaintiff was his only surviving child and his only heir. He had long intended that this land, with all his property, of which this was but a small part, should go to this son, and with that in view he had for years called it his son's farm. He was so much affected by the pending actions with his son that he

evidently contemplated disinheriting him, if the litigation should be carried to judgment. These are some of the circumstances showing that the conduct of the defendant in securing a dismissal of those actions, and the restoration of kindly relations with his son, was not based on such considerations of relative values as ordinarily influence contracting parties.

4. It is urged that the proof of the alleged agreement was insufficient; that the land to which it referred was not designated with certainty, and, if it was, that it did not embrace all the land in question. It is said, too, that the agreement was, at most, only an agreement for a gift. After a careful examination of the evidence, with the principle in mind that the proof in such cases must be clear and satisfactory, we are convinced that the findings and conclusion of the learned district judge should be sustained. A recital in this opinion of the evidence justifying this conclusion would be of no interest or benefit, either generally or to the parties. It seems to us that the only point on which there could be serious doubt is as to whether the "Sacramento Farm," which was the subject of the alleged agreement, embraced and was understood as designating the 1,440 acres of land in controversy. It is true that there was a farm of 320 acres, consisting of land which had originally been platted as the town-site of Sacramento, and which was properly designated the "Sacramento Farm," and that the remainder of the 1,440 acres lying around it, with some tracts not contiguous, consisted of lands or farms which were designated by the names of the persons from whom the same had been purchased by the defendant, and that the whole had never been used as one farm. But the finding of the court was justified by the evidence going to show that the defendant had for many years been accustomed to speak of all this land as the "Sacramento Farm," and had spoken of it as including several farms; that the defendant, in conversation in reference to this alleged agreement, spoke of the land as embracing 1,440 acres, and as being a large farm where the plaintiff and his wife would need a good deal of help; that for many years, as the defendant shows by his own testimony, all this land had been spoken of by him as "Kern's Farm," (by which name he designated this plaintiff;) that he had long in-

tended that it should all ultimately be his property, and wanted him, as the only male representative of the family, to retain it in the family name; that directly after the alleged agreement the defendant invited the plaintiff and the young lady whom he was to marry, with some of her kindred, to go to the farm and *select* a house for themselves, which he proposed to improve for their occupancy; that in making such selection, in company with the defendant, examination was made, not only of a house on the Sacramento town-site tract, but of one on the Orcutt quarter-section, north of the town-site, which latter house was one of those from which the defendant expected the selection to be made.

The agreement as found by the court was not a mere agreement for a *gift.* It involved a consideration which gave to it the character of a contract.

Order affirmed.