MOSES FERGUSON v. BETSEY TROVATEN and Another.[1]

February 10, 1905.

Nos. 14,043—(45).

**Vendor and Purchaser—Statute of Frauds—Printed Signature.**

Action to recover the possession of land. Each party based his right of possession upon a contract of sale and purchase from the same party. *Held:*

1. To constitute a contract for the sale of real estate valid within the statute of frauds, a written offer to buy or sell it must be accepted in writing, but the offer and acceptance need not be in the same writing.

2. The printed signature of the authorized agent of the vendor appearing in the writing in this case, which is claimed by the defendants to be a valid contract for the sale of the land, does not constitute a subscribing or a signing of the contract within the meaning of the statute of frauds.

3. It was error for the trial court to exclude an offer on behalf of the defendants to show an oral acceptance of their application to purchase the land, with proof of such performance on their part as would take the contract out of the statute.

Action in the district court for Wilkin county to recover possession of land and $1,000 for the detention thereof. The case was tried before Flaherty, J., and a jury, which rendered a verdict in favor of plaintiff for possession and $540 damages. From a judgment entered pursuant to the verdict, defendants appealed. Reversed and new trial granted.

*Lyman B. Everdell* and *Chas. E. Wolfe,* for appellants.

*W. V. Kane* and *Thomas Kneeland,* for respondent.

START, C. J.

This is an action to recover from the defendants the possession of the land described in the complaint, with damages for withholding it from the plaintiff. Both parties claim title through a common source, the Northern Pacific Railroad Company, hereafter referred to as the company. The plaintiff's claim to the land was based upon an execu-

[1] Reported in 102 N. W. 373.

tory agreement to convey the land to him for the sum of $3,000, made July 2, 1901, by the company, and a further contract made by it on December 23, 1902. In this last contract it was recited that it was the intention of the parties by the original to confer upon the plaintiff the right of possession to the land, and such right was thereby expressly given and confirmed to him, subject to any right in the land existing in any other person theretofore acquired from the company. The defendants' claim to the land and their right to retain the possession thereof was based upon an alleged contract with the company for the purchase of the land by the defendant Betsy Trovaten, the wife of her codefendant, the payment of the purchase price therefor, and the entry into the possession thereof under the contract, and the making of permanent improvements thereon.

At the close of the evidence the trial court directed a verdict for the plaintiff for the recovery of the possession of the land, and submitted only the question of damages to the jury. The jury returned a verdict accordingly, and awarded the plaintiff damages in the sum of $540. The defendants then made a motion for judgment in their favor notwithstanding the verdict, or for a new trial. The motion was denied, and judgment entered on the verdict, from which the defendants appealed.

The assignments of error relied upon by the defendants are to the effect that the trial court erred in its rulings as to the admission of evidence and in directing a verdict for the plaintiff. This necessitates an examination of the evidence received on the trial and that offered by the defendants and excluded by the court. The plaintiff offered in evidence his contracts with the company, to which reference has been made. The contracts established a prima facie right in the plaintiff to the possession of the land. The evidence, however, was undisputed that the defendants have been in the actual possession of the land and cultivating it since April, 1900; hence the plaintiff, who did not obtain either of his contracts until July, 1901, is charged with notice of the rights of the defendants in the land, if any they have.

It is practically admitted that at all times hereinafter stated Wilsey, the land agent of the company, and Phipps, its land commissioner, were each authorized to sell its land in this state and execute contracts therefor, but all applications for the purchase thereof were

subject to the acceptance and approval of the land commissioner. The defendants offered evidence tending to show: That A. A. Trovaten, hereafter referred to as the "defendant," went, on July 22, 1899, to the office of the land commissioner, and made application to him to purchase the land in question for his wife. That at this time the company had not then perfected its title to the land, as it was indemnity land, and the defendant then had a contest as to it pending in the proper land office of the United States. That the defendant then had a talk with the land commissioner as to the terms upon which an application for the purchase of the land would be accepted, and the terms of the sale were talked over. That the land commissioner dictated to one of his clerks the terms of the application, which was partly printed and partly written, and when completed it described the land, stated the purchase price therefor ($1,200), the time and manner of the payment, and the names of the parties, and in the margin thereof these words:

> A. A. Trovaten, contestant, is to relinquish contest, and if we perfect title, sale is to be entered and deed made; otherwise relinquishment and money to be returned.

That the defendant then signed the application, but there was no written acceptance by the company at this time other than the writing in the margin thereof and the printed signatures of its land agent and land commissioner at the end of certain printed instructions and conditions. Then followed, in the same instrument, the application proper for the sale of the land. That seven days thereafter the defendant paid to the company $400 on the purchase price of the land, and on December 29, 1899, he paid the balance thereof, $800. That the company acknowledged in writing, signed by its land agent, the receipt of these payments. That the receipt for the first payment was in these words:

> Your favor of the 26th instant remitting $400 on account of application for the S. E. ¼ of section 1, in township 134, of range 48, is received. I note your statement that the balance of amount can be forwarded when we are prepared to enter sale. It was the understanding at the time this matter was talked over in the office that you would remit the full amount required, and that same would be held with your application until the company can perfect title and transfer the property to you by

deed. Kindly forward balance of the amount together with your formal relinquishment as soon as possible and oblige.

That the defendant relinquished his contest, and paid the balance of the purchase price as requested; and that on February 23, 1900, the company wrote the defendant that it was holding his application until such time as the question of title could be adjudged.

On the trial the defendants also offered to show by the defendant substantially these facts: That the land commissioner orally offered to sell the land for $1,200; that the defendant accepted the offer; that his application for the purchase of the land was then prepared, and signed by him, as before stated; that the land commissioner accepted and approved of the application, and agreed that as soon as a patent for the land was secured a deed therefor would be made to the defendant's wife; and that the defendants paid the purchase price, entered upon the land, and made valuable improvements thereon. The court excluded the evidence upon the objection of the plaintiff, which was to the effect that statements and negotiations prior to the written application were inadmissible to contradict or vary the writing.

The defendant had testified that the land commissioner said nothing about accepting the application after it was made. The company, on April 29, 1901, offered to return to the defendant the purchase price of the land, but he refused to receive it. It does not appear from the record when the company secured a patent for the land, but it is admitted by the pleadings that it secured the legal title thereto long before the plaintiff obtained his original contract for the purchase of the land. The application and receipts were received in evidence over the objection of the plaintiff to the effect that they were incompetent and immaterial for the reason they did not tend to show any valid contract for the sale of the land, there being no written acceptance of the contract by the company.

1. The defendants' first group of assignments of error relate to the question of damages for the withholding the possession of the land from the plaintiff. Evidence on behalf of the plaintiff was received over the objection of the defendants, tending to show the rental value of the land from the date of the plaintiff's original contract, and it is apparent from the record that the jury included in the verdict the rental value from that date. The defendants claim that this was error, be-

cause the original contract did not give the plaintiff the right of possession of the land as against the company or any one else. The contract contained no express agreement as to the possession of the land, but it provided for the payment by the plaintiff of the taxes assessed thereon, and the payment of the interest annually on the purchase price from the date of the contract; and, further, that the buildings and improvements then and thereafter placed on the land should not be removed therefrom. The contract contained other provisions indicating that it was the intention of the parties to thereby give the plaintiff the right of possession. We hold that the contract gave the plaintiff, as against the company, the right of possession of the land from the date of his contract. Olson v. Minnesota & N. Wis. R. Co., 89 Minn. 280, 94 N. W. 871.

2. The remaining assignments of error relate to the action of the court in excluding the evidence offered by the defendants and in instructing the jury to return a verdict for the plaintiff. The answer alleges a contract for the purchase of the land from the company to the defendants; that they paid the purchase price thereof, and on April 15, 1900, entered into possession of the land under such purchase and payment, and made improvements thereon of the value of $1,500. No objections to the answer were made before or during the trial of the action. The answer must, then, be liberally construed, and it may be fairly held to allege a contract for the purchase of the land, followed by payment of the purchase price, entry into possession of the land under and in reliance upon the contract, and the making of valuable improvements thereon to the amount of $1,500. It may be inferred that the improvements were permanent from their value, for it would be difficult to improve a farm to the extent of $1,500 unless the improvements were of a permanent character.

Now, if the defendants had proved on the trial these allegations of their answer, either by documentary or oral evidence, or both, it would have defeated the plaintiff's right of possession to the land. This conclusion follows from the rule that a verbal contract for the sale of land may be enforced where there has been a part performance thereof on the part of the vendee by payment of the purchase price, entrance into possession of the land under and in reliance upon the contract, and making valuable improvements thereon. Jorgenson v. Jorgen-

son, 81 Minn. 428, 84 N. W. 221. It is the contention of the defendants (a) that they gave in evidence a memorandum in writing of the terms and conditions of a contract for the sale and purchase of the land executed by the parties in a manner sufficient to satisfy the statute of frauds; (b) that, if this be not so, then the documentary and oral evidence received on the trial in connection with the evidence offered and excluded by the court were sufficient to show a verbal contract for the purchase of the land, and such performance thereof by the defendants as to take such contract out of the statute of frauds.

3. Counsel for defendants urge in support of their first proposition that the documentary evidence, considered as a whole, shows a valid contract of sale and purchase of the land without reference to the evidence as to the performance of the contract by the defendants. To constitute a contract for the sale of real estate valid within the statute of frauds, a written offer to buy or sell it must be accepted in writing. Lanz v. McLaughlin, 14 Minn. 55 (72). The offer and acceptance in such a case need not be contained in one writing, but detached writings, or a series of letters, if so connected by reference therein to show that they all relate to the same transaction, may constitute a valid contract for the sale of real estate. Sanborn v. Nockin, 20 Minn. 163 (178); Tice v. Freeman, 30 Minn. 389, 15 N. W. 674. It is claimed on behalf of the defendants that the printed signature of the land commissioner in the application was a sufficient signing to constitute an acceptance within the rule stated. It is obvious from a mere inspection of the application that the name of the land commissioner printed thereon was intended only for the purpose of authenticating the printed instructions and conditions, and, further, that it is not a signature within the meaning of the statute. Browne, St. Frauds, § 357.

Again, it is urged that the letters herein referred to establish a written acceptance of the application; but they were signed by the land agent, and not by the land commissioner, to whose approval all applications were subject. It follows, and we so hold, that the documentary evidence offered by the defendants did not establish a valid contract for the sale and purchase of the land.

4. This brings us to the question whether the trial court erred in excluding the offered oral evidence and instructing the jury to return

a verdict for the plaintiff. The principal reasons urged on behalf of the plaintiff in support of the court's ruling are to the effect that the offer to prove a verbal acceptance of the application was inconsistent with the claims under the alleged written contract for the sale of the land; and, further, that it tends to vary the terms and conditions of the application and letters already in evidence, which show that the land commissioner treated the application at all times simply as an un-accepted one. There was no inconsistency in the claims made by the defendants. The answer alleged a contract for the sale and purchase of the land, and such performance thereof by them as would take an oral agreement out of the statute of frauds, without stating whether the contract was a written or a verbal one. This authorized the proof of either a written contract for the purchase of the land sufficient to satisfy the statute of frauds, or an oral one with proof of such perform-ance as would take it out of the statute. Slingerland v. Slingerland, 46 Minn. 100, 48 N. W. 605.

The defendants' claims in this respect were alternative, not incon-sistent, ones. The fact that they offered documentary evidence, which was received over the plaintiff's objection that it was not sufficient to satisfy the statute of frauds, did not preclude them from proving an oral acceptance of their application and performance of the contract by them, for there was, as a matter of law, no written acceptance of their application. It is to be noted in this connection that the defend-ants did not propose to show any other or different conditions and terms of sale than those stated in the application. Nor was the offered evidence so obviously inconsistent with the testimony given by the de-fendant before the offer was made as to justify the ruling of the court, for his testimony to the effect that the land commissioner said nothing about accepting the application after it was made may be construed as referring to the time after the terms of the application had been dictated to the clerk by the commissioner and signed by the defendant as written out by the clerk. Nor was the offered evidence inconsistent with the documentary evidence, for the alleged reason that such evidence con-clusively shows that the application was never treated by the commis-sioner as anything more than a standing, unaccepted one.

We have stated the substance of the documentary evidence bearing upon the question of the acceptance by the company of the application.

We, however, refrain from discussing it, as there must be a new trial. It is sufficient to say that, taken as a whole, the documentary evidence does not conclusively show that the land commissioner treated the application only as a standing and unaccepted one. On the contrary, it may be fairly construed as not inconsistent with the claim of the defendants that the application was orally accepted, subject only to the condition that the company should be able to perfect its title to the land.

The last objection to the offer of evidence to be considered is to the effect it was not specific enough as an offer to show that possession was taken under the contract with the express or implied consent of the company. No such objection was made on the trial, and, in view of the objections actually made and the evidence then before the court, we are of the opinion that the offer was sufficiently specific. We hold that the exclusion of the evidence offered was error, for which a new trial must be granted.

Ordered that the judgment appealed from be reversed, and a new trial granted.