## THE LAKE COMPANY v. CHARLES MOLAN.

131 N. W. (2d) 734.

November 25, 1964—No. 39,208.

*Sigal, Savelkoul, Cohen & Sween,* for appellant.
*Perry W. Copeland,* for respondent.

NELSON, JUSTICE.

This action, brought by The Lake Company to recover a real estate commission, resulted in a directed verdict in its favor and defendant appeals from the judgment entered pursuant thereto after denial of his alternative motion for judgment n. o. v. or a new trial.

On February 27, 1960, defendant signed an exclusive listing agreement with plaintiff which provided:

"In consideration of your agreement to list in your office, the real estate described on the reverse side hereof [a tract described as 5001 Central Avenue Northeast, Minneapolis, Minnesota] and for your efforts to find a purchaser for the same, I hereby grant to you the exclusive right to sell or to contract to sell said real estate at the price and upon the terms stated on the reverse side hereof.

\* \* \* \* \*

"I hereby agree to furnish complete abstract of Title or Torrens Certificate of Title to said real estate and to execute a deed of general warranty in due form of law, conveying a marketable title to the same \* \* \* to such persons as you shall have sold or agreed to sell same, and for your services, I hereby agree to pay you 6% commission on the purchase price thereof upon any sale or contract for sale of said real estate made while this agreement remains in force or made within three months next after the termination of this listing to any person to whom said realty shall have been shown or offered during this listing, whether such sale be made by yourselves, or another realtor, or by myself, or by any agent or broker, or whether at the price and upon the terms stated on the reverse side hereof, or at a different price, or upon other terms accepted by me."

The agreement also provided that the price was to be $30,000, with a downpayment of $7,500, and that the listing was for a period of 60 days.

On April 4, 1960, plaintiff's president, Peter Petro, procured an offer to buy from Clark Oil & Refining Corporation, hereinafter referred to as Clark, and presented it to defendant and requested that he sign it. The price specified in this offer was $25,000, with the downpayment to be $1,000 and the balance to be paid when the deal was closed. The offer was dated April 4, 1960, addressed to defendant, and expressly required acceptance within 10 days. It also provided as follows:

"The undersigned [Clark] agrees to buy said property at the price stated, \* \* \* and you are to sell and convey the same as aforesaid by WARRANTY Deed \* \* \*. When \* \* \* title papers have been

furnished, the undersigned shall close the deal within ten days if the title is merchantable * * *. * * * if the undersigned defaults in this contract, the deposit is at your option to be forfeited, as liquidated damages, first paying the real estate broker's commission and expenses incurred, and. rendering the balance to you, and the contract shall become null and void. * * * a failure to appear upon notice to close the deal at the place mentioned in this contract shall be a default. * * *

\* \* \* \* \*

"This offer is contingent upon Purchaser's success in obtaining within ninety (90) days from date hereof from proper state and local authorities all necessary permits in accordance with Purchaser's plans and specifications, for the construction and operation of a gasoline service station. If Purchaser is unable to obtain said permits, within the ninety (90) day period specified, then this offer and Seller's subsequent acceptance will become null and void and all earnest money refunded.

"Seller warrants that to the best of his knowledge there are no restrictions or easements, either recorded or unrecorded that would prohibit or interfere with the construction and operation of a gasoline service station on the property herein described. If it develops upon examination of title that such an easement or restriction exists, and Purchaser shall so notify Seller in writing, Seller shall have thirty (30) days in which to remove, release or cure same to the Purchaser's satisfaction. If Seller is unable to do so within the said thirty (30) day period, Purchaser shall have the right to cancel and terminate this contract and Seller shall refund all earnest money.

"The Seller agrees to furnish and pay for ten (10) copies of a current survey on the premises herein described.

"Possession of the property shall be given Purchaser at time of closing.

"*It is agreed that this offer is subject to Seller obtaining two (2) driveway openings on Highway 65 for Purchaser, or Seller must obtain at no cost to Purchaser, a service road to be located next to the property*." (Italics supplied.)

Defendant rejected this offer. Mr. Petro then changed the price specified therein from $25,000 to $30,000—the price provided in the listing agreement—and the amount to be paid on closing from $24,000 to $29,000. Defendant wrote his initials opposite these changes and signed the offer as thus modified.

Plaintiff introduced the instrument signed by defendant into evidence. It shows execution as follows:

"Dated April 4, 1960, at Milwaukee, Wisconsin.
"CLARK OIL & REFINING CORPORATION (SEAL)
"/s/ GEORGE T. WORMLEY (SEAL)
"The above offer is hereby accepted and it is agreed that the said property will be sold and conveyed according to the same.
"/s/ CHAS D MOLAN (SEAL)
"Charles Molan
    Owner"

The record fails to disclose whether Clark's officer signed the original offer or signed it after the changes required by defendant had been made.

On April 20, 1960, defendant's attorney sent the abstract of title to the property involved to plaintiff. On June 30, 1960, Clark's attorney sent the following telegram to defendant's attorney:

"We are prepared to close 5001 Central, Columbia Heights, Minnesota in accordance with purchase contract terms. Please contact undersigned for closing date."

Defendant's attorney then wrote Clark as follows:

"I have just received your telegram * * *.

"I am assuming that you have satisfactorily resolved the question of access and service road, and that my client will not incur any cost in connection therewith.

"The 90 day period referred to in the Offer to Buy would expire on July 3. Because of the holiday situation occurring, it would be agreeable if final closing and payment is deferred to Tuesday, July 5.

"Trusting that this will be satisfactory with you, and that closing can be had on such date in my office * * *."

Neither plaintiff nor Clark responded to this letter, nor did either appear on July 5 for the closing. Mr. Petro testified that he tried to reach defendant's attorney but was unsuccessful. An explanation for their absence was not offered at the trial.

On July 13, more than 90 days following the date of the offer, defendant's attorney telegraphed Clark as follows:

"Please consider Molan property matter terminated because of your failure to comply with purchase agreement and my letter of June 30."

On July 29 Clark's attorney sent the following telegram to defendant's attorney:

"We will be in your office on Wednesday, August 3rd for closing of 5001 Central, Columbia Heights, Minnesota, *in accordance with terms of Purchase Contract dated April 4, 1960, between this corporation and Charles Molan.*" (Italics supplied.)

On the same day he sent Mr. Petro a copy of the telegram and sent the following letter to Mr. Petro:

"* * * Please inform Mr. Molan of the closing date. *Naturally we do not expect to come to Minneapolis on Wednesday unless I hear from you regarding this closing and have some assurance that the closing can be made on our terms.*" (Italics supplied.)

Petro testified that he received a copy of the telegram of July 29, 1960, and that he went to the defendant's home to discuss the suggested closing. Defendant told him to see his attorney. Mr. Petro testified that he telephoned the attorney and asked him if it was agreeable to close the transaction, but the attorney told him to see defendant about it, and that upon again contacting defendant he was again told to see his attorney. No meeting took place between the parties on August 3 or thereafter.

About a week later plaintiff received a note from defendant stating in part:

"Please do not call or write to me no more as my attorney Don Savelkoul Fe 3-2488, is taking over everything."

On September 30, Mr. Petro returned the $1,000 deposit made by Clark. Whether Petro consulted with defendant in regard to returning the downpayment is not shown by the record.

The only evidence submitted regarding a building permit showed that a permit for erection of a service station, dated May 12, 1960, had been issued, not to Clark, but to "Peter Petro, Master Craft Const. Co." as owner. There is no evidence that defendant complied with the provision in the offer requiring him to obtain driveway openings or location of a service road next to the property.

The issue presented is whether plaintiff upon the record before this court has established by sufficient proof that it is entitled to recover a real estate commission under the foregoing facts. Defendant contends that no binding and enforceable contract was entered into between Clark and himself; that plaintiff failed to produce a buyer ready, willing, and able to purchase the property in accordance with the terms of the listing agreement or otherwise; and that plaintiff was not entitled to a directed verdict.

Defendant further contends that, assuming that a contract had been made, Clark was clearly in default on essential terms and he therefore was entitled to terminate the agreement.

■ Minn. St. 513.05 provides:

"Every contract for the leasing for a longer period than one year or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing * * *."

As early as Lanz v. McLaughlin, 14 Minn. 55 (72), this court laid down the rule that to constitute a contract, valid within the statute of frauds, to convey real estate, an offer in writing to sell must be accepted in writing. See, Kileen v. Kennedy, 90 Minn. 414, 97 N. W. 126; Newlin v. Hoyt, 91 Minn. 409, 98 N. W. 323; Ferguson v. Trovaten, 94 Minn. 209, 102 N. W. 373.

In Bey v. Keeping, 192 Minn. 283, 256 N. W. 140, also, we held that in order to conform to the requirements of the statute of frauds the acceptance of the terms of a written proposal for the purchase of real estate must be in writing. The question presented in that case was whether or not there was a sufficient contract to justify specific performance. We held that there had not been an unqualified, written acceptance and hence there was no contract under Mason St. 1927, § 8460 (now Minn. St. 513.05).

■ This court has consistently held that the broker does not become entitled to his commission by tendering a contract signed by a proposed purchaser, unless the contract can be enforced against the purchaser if accepted and executed by the owner. Huntley v. Smith, 153 Minn. 297, 190 N. W. 341; 3 Dunnell, Dig. (3 ed.) § 1147, p. 30. In the Huntley case it was held that the contract was not enforceable against the defendant seller because it had not been executed in her behalf by an agent authorized in writing as required by the statute of frauds and that it was not enforceable against the purchaser because it was too indefinite and uncertain. We also said in that case that a contract for the sale of land, to be enforceable, must be sufficiently definite so that all the terms thereof can be determined from the information given by the contract.

■ No contract is complete without the mutual assent of the parties thereto, and an offer to buy or sell property imposes no obligation until it is accepted according to its terms. A proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiations unless the party who made the original offer renews it or properly assents to the modifications suggested. Kileen v. Kennedy, *supra.*

■ It has therefore been consistently held to be the rule in this state that a real estate broker, in order to earn a commission for finding a purchaser, must either obtain a contract from a proposed purchaser able to buy, *whereby he is legally bound to buy on the authorized terms,* or must produce a proposed purchaser, able, willing, and ready to buy on the authorized terms. McDonald v. Smith, 99 Minn. 42, 108 N. W. 291; Hare v. Bauer, 223 Minn. 285, 26 N. W.

(2d) 359. In Gopher State Business Opportunities, Inc. v. Stockman, 265 Minn. 185, 121 N. W. (2d) 613, we stated:

"A broker with whom the owners list real property for sale upon terms specified in the listing agreement does not earn a commission when he presents them a purchase agreement containing different terms of sale."

■ The trial judge in directing a verdict in the instant case concluded that the parties had entered into a complete and binding agreement to convey the land in question, but the record is unclear as to when such agreement was consummated.

The telegram sent by Clark to defendant's attorney on June 30, 1960, is the only written evidence of any type of acquiescence to defendant's counteroffer. But that telegram refers to closing the transaction in accordance with the terms of the offer of April 4, 1960, the date of Clark's original offer.

Why would plaintiff return the $1,000 deposited with it as earnest money at the time of submitting the offer to purchase if there had been a legal written acceptance by Clark of defendant's counteroffer? Assuming, however, that a purchase agreement had been made, the failure of Clark to appear at the scheduled July 5, 1960, closing was a default and the contract thereby became void. Moreover, it appears that Clark did not obtain the permits within the 90-day period provided therefor and defendant did nothing to obtain the necessary driveway openings or service road. Under the circumstances defendant, after expiration of that period, had no right to specific performance or any other remedy. He could not sue on the contract since the conditions precedent to Clark's liability were never performed in the manner provided by its terms. This court has held, speaking through Mr. Justice Mitchell in Chambers v. Northwestern Mutual Life Ins. Co. 64 Minn. 495, 497, 67 N. W. 367, 368, that—

"* * * A condition precedent as known in the law, is one which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and

upon the performance or happening of which its obligation is made to depend."

See, also, Liebsch v. Abbott, 265 Minn. 447, 122 N. W. (2d) 578; 17A C. J. S., Contracts, § 338; Monteleone v. Blache, 11 La. App. 99, 120 So. 900; Annotation, 76 A. L. R. (2d) 1195.

Bankers Service Co. v. Schouweiler, 163 Minn. 25, 203 N. W. 417, involved an action by a broker for a commission he was to receive upon a sale of stock. The broker procured a purchaser and an agreement with the seller was consummated. The purchase agreement was subject to a condition and it was provided that if the condition was not fulfilled the contract was to become null and void. The condition was not fulfilled. We held that no enforceable contract had been made and therefore the broker had not earned a commission.

■ Plaintiff's action in returning the downpayment to Clark is also a ground for denying recovery. Decisions are collected in Annotation, 69 A. L. R. (2d) 1244, 1246, and summarized there as follows:

"It has generally been held that where an agreement of purchase and sale gives the seller the right to declare a forfeiture of the purchaser's deposit upon the purchaser's failure to consummate the sale, a broker who returns such deposit to a defaulting purchaser without the seller's authorization * * * may not recover commission from the seller."

In Politte v. Wall (Mo. App.) 256 S. W. (2d) 283, the broker returned the deposit to the purchaser without the knowledge or consent of the sellers. The Missouri court said that the broker by doing so exceeded his authority. His agency was limited and he thus had no implied or apparent authority to rescind or abandon a sale. The court thus held (256 S. W. [2d] 285):

"In so doing, the broker violated his duty under the earnest money contract which obligated him to keep the deposit as part payment of the purchase price, and either pay it over to the seller upon completion of the deal or declaration of a forfeiture, or pay it over to the purchaser only, if and when it was determined by competent authority that an imperfect title could not be perfected within a rea-

sonable length of time. Because of this breach plaintiff cannot recover his commission."

In Somers Co. v. Pix, 75 Wash. 233, 134 P. 932, the broker allowed the purchaser to withdraw the earnest money because of an objection to the title which did not in fact prevent it from being marketable. The court held that in doing so he waived his right to his commission, commenting (75 Wash. 237, 134 P. 934):

"* * * The purchaser was content to take down his earnest money. He went out of the case with the consent of the plaintiff [the broker], and in going he absolved defendant of all liability to perform so far as he was concerned. * . * * If the purchaser is acquitted of · his contract there can be no purchase price."

On the authority of these decisions we hold that where an agreement for the sale of land gives the seller the right to declare a forfeiture of the purchaser's deposit upon the latter's failure to consummate the sale, a broker who returns such deposit to a defaulting purchaser without the seller's authorization may not recover a commission from the seller. Application of this rule to the instant case depends upon whether or not defendant authorized the return of the downpayment. The record fails to establish when defendant was informed of the return, but it is apparent he did not authorize it.

Clark's offer of April 4, 1960, clearly indicated that it was not willing to buy on the terms specified in the listing agreement with respect to the price and the downpayment. The offer to buy also contained the other conditions heretofore discussed.

Defendant required a change in the purchase price by increasing it to $30,000 and requiring $29,000 to be paid on closing, but required no other changes in the provisions of the offer. However, the final telegram sent by Clark, suggesting a closing date, referred to the terms of the offer of April 4, 1960. Without explanation of the several apparent inconsistencies, it could well be assumed from the facts shown by the record that plaintiff returned the earnest money payment wholly of its own accord due to a failure to obtain a written acceptance, in compliance with the statute of frauds, of defendant's counteroffer. Clark's telegram of July 29, 1960, to defendant's attor-

ney, stating that its representatives would come to his office on August 3 for the closing "in accordance with terms of purchase contract dated April 4, 1960," and the contemporaneous letter to Petro, stating that they did not expect to come to Minneapolis on the date designated unless they had some assurance that the closing could be made on Clark's terms, make it clear that plaintiff had not, as of July 29, 1960, produced a buyer who was able, willing, and ready to purchase on the seller's terms.

Since the record fails to prove that plaintiff as defendant's real estate agent presented him with a binding and enforceable offer or contract of sale from Clark or a buyer able, willing, and ready to purchase on defendant's terms, we are required to reverse in this case. It was error for the trial court to direct a verdict in plaintiff's favor under the circumstances.

Reversed.