CROSSROADS CHURCH OF PRIOR
LAKE MN, Relator,

v.

COUNTY OF DAKOTA, Respondent.

No. A10–859.

Supreme Court of Minnesota.

March 2, 2011.

Rehearing Denied April 15, 2011.

Valerie LeMaster, John M. Dornik, MacKenzie & Dornik, P.A., Minneapolis, MN, for relator.

James C. Backstrom, Dakota County Attorney, Suzanne W. Schrader, Assistant County Attorney, Hastings, MN, for respondent.

## OPINION

ANDERSON, PAUL H., Justice.

This appeal arises out of respondent Dakota County's denial of tax exemption for a building purchased by Crossroads Church of Prior Lake. The County concluded that Crossroads did not "acquire" the building before July 1, 2008. Based on this conclusion, the County denied Crossroads' application for a property tax exemption for the year 2008 under Minn.Stat. § 272.02, subd. 38 (2010). Subdivision 38 provides for a property tax exemption in the year of purchase only when the real property is "acquired" by an exempt entity before July 1 of that year. Crossroads brought a property tax appeal petition to the Minnesota Tax Court. That court granted summary judgment in favor of the County, and Crossroads appealed to our court. We affirm.

In early 2008, relator Crossroads Church of Prior Lake was located at a facility in Prior Lake. Because of an increase in Crossroads' membership, the Prior Lake facility was no longer large enough to accommodate the congregation. Crossroads began to search for a building at a new location. It found a suitable building in Burnsville and in early 2008, Crossroads' pastor Craig Johnson entered into negotiations with the building's owners, Heise & Heise, LLC, to purchase the Burnsville property as a replacement church facility. In late January or early February 2008, Crossroads and Heise & Heise apparently reached an oral understanding that Crossroads would purchase the Burnsville property as part of a three-way property exchange that would include two other real estate transactions. The second transaction was to be a purchase of Crossroads' old facility in Prior Lake by Heise & Heise's real estate broker, EFH Realty Advisors. The third transaction was to be a purchase by Heise & Heise of a building owned by Gene Happe, the owner of EFH.

After reaching the oral understanding to purchase the Burnsville property, Crossroads began making preparations to convert the property, which had previously been used for commercial purposes, to a church. Pastor Johnson and the Crossroads board met with architects from two firms to discuss conversion plans. Between February and April 2008, these firms drew up plans for the future church.

Some of the plans were made available to Crossroads by March 2, 2008, when it hosted an open house for its congregation at the Burnsville property.

On March 6, 2008, a purchase agreement was drafted to reflect the terms of the oral understanding. The draft purchase agreement provided that Crossroads' offer to purchase the Burnsville property had to be accepted by March 15, 2008, and provided for an earnest money payment of $10,000 by Crossroads. It also stated the closing had to occur by June 1, 2008.

The draft purchase agreement provided that the seller would deliver possession of the property on the date of closing. It also stated:

> This Purchase Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the property. There are no verbal agreements that change this Purchase Agreement and no waiver of any of its terms will be effective unless in writing executed by the parties.

The draft purchase agreement also contained the following five conditions:

1. Buyer's simultaneous entering into an agreement for sales of property referred to as the "Crossroads Church building" located at 6880 Boudin St., in Prior Lake, Minnesota per the purchase agreement attached hereto as Exhibit B.

2. City of Burnsville's approval of Seller's property for use as a church and the related uses of the Seller.

3. Buyer securing financing necessary to complete the purchase of seller's property.

4. Buyer of purchaser's property securing approval of the City of Prior Lake for it's [sic] intended uses by buyer of the church property including rezoning of the property for Commercial uses.

5. Simultaneous closing of the purchase of this property and the closing of the purchase of the "Crossroads Church Building."

It appears that the terms of this draft purchase agreement may have been orally accepted by representatives of Crossroads and Heise & Heise by March 15, 2008; but the purchase agreement was not executed until August 2008. The Crossroads congregation voted to approve the purchase of the Burnsville property at a Special Business Meeting on March 30, 2008. Ten days later, on April 10, a Crossroads representative wrote a check for $10,000, which Pastor Johnson delivered to EFH, in its capacity as Heise & Heise's broker. Delivery of the check in this manner was consistent with the draft purchase agreement. The check was not deposited or cashed until August 2008 at the earliest.

By April 14, 2008, Heise & Heise had terminated its operations at the Burnsville property and moved to a new location. Pastor Johnson received a key to the building on April 21, and, between April and August 2008, he and other church staff and volunteers were at the Burnsville property almost daily. During this time, they took several steps to make the new building suitable for use as a church. Pastor Johnson and other Crossroads staff sought and received cost estimates for a communications system, carpets, lighting, and seating. They also made some minor physical alterations to the building, including replacing a door, erecting new signs, and painting parts of the building. Crossroads also sought financing to complete the purchase and obtained a mortgage commitment.

Crossroads also began the process of obtaining the necessary zoning changes to allow the Burnsville property to be used as

a church. Crossroads and Heise & Heise petitioned the City of Burnsville for approval of a zoning change, and made the necessary payments connected with this petition. When the Burnsville City Council first discussed the petition on June 17, 2008, the Council noted in its minutes that city staff recommended that the petition be denied. The Council then postponed a vote on the petition. On July 8, 2008, the Council reconvened and voted to approve Crossroads' and Heise & Heise's petition to allow the Burnsville property to be used as a church.

While Crossroads was making the foregoing preparations to finalize the purchase and move into the building, details of the sales of the other properties being transferred as part of the three-way exchange were being completed, as required by the terms of the draft purchase agreement. On August 25, 2008, Crossroads' $10,000 check was deposited into escrow by EFH. Three days later on August 28, representatives of Crossroads, EFH, and Heise & Heise executed the purchase agreement for the Burnsville property. The closing took place eleven days later on September 8. The final purchase price of the Burnsville property was $4,500,000.

In December 2008, Mark Ericson, the accountant and financial secretary for Crossroads, completed, signed, and submitted to the County an application for property tax exemption for the Burnsville property. The application listed "September 2008" as the date that the Burnsville property was "acquired" by Crossroads. After this litigation began, Ericson filed an affidavit, in which he stated that, although Crossroads acquired legal title to the Burnsville property in September 2008, that month did not reflect when Crossroads paid earnest money or acquired possession. Ericson did not, however, assert that Crossroads "acquired" the property in a month different from that which he had originally stated—September 2008.

In March 2009, Crossroads received a $51,918 property tax bill from the County for real estate taxes assessed to the Burnsville property for the full year of 2008, and payable in the first half of 2009. Crossroads brought a property tax appeal petition to challenge this assessment, asserting that the Burnsville property was exempt from taxation. On May 7, 2009, Crossroads also brought a motion, under Minn.Stat. § 278.03, subd. 1 (2010), for permission to prosecute its property tax appeal without paying the first one-half of the 2008 taxes due and payable in 2009.[1] The tax court denied the motion. *Crossroads Church of Prior Lake MN v. County of Dakota*, No. 19HA–CV–09–2780, 2009 WL 1506968, at *1 (Minn.T.C. May 14, 2009). On September 30, 2009, Crossroads brought a second motion for permission to prosecute its appeal petition without payment of the second one-half of 2008 taxes due and payable in 2009. The tax court also denied this motion from the bench.

■ On October 12 and 13, 2009, respectively, Crossroads and the County filed motions for summary judgment on the issue of whether Crossroads had "acquired" the Burnsville property before July 1, 2008, and was therefore entitled to tax exemption for the year 2008 under Minn.Stat. § 272.02, subd. 38(b).[2] On No-

---

1. Minnesota Statutes § 278.03, subd. 1, provides that a petitioner may apply to the court for permission to continue prosecution of the appeals petition without paying the tax when (1) the proposed review is to be taken in good faith; (2) there is probable cause to believe

that the property may be held exempt; and (3) it would work a hardship upon petitioner to pay the taxes due.

2. Because Crossroads raised the issue of the constitutionality of Minn.Stat. § 278.03

vember 10, the tax court held a hearing on the parties' motions for summary judgment. After the hearing, the court requested briefing by the parties on the legislative history and intent with respect to the meaning of the word "acquired" as used in Minn.Stat. § 272.02, subd. 38(b).

On April 13, 2010, after receiving the parties' legislative history briefing, the tax court granted the County's motion for summary judgment and denied Crossroads' motion for summary judgment. *Crossroads Church of Prior Lake, MN v. County of Dakota,* No. 19HA–CV–09–2780, 2010 WL 1558557 (Minn.T.C. April 13, 2010). In its order, the court held that (1) the term "acquired," as used in Minn.Stat. § 272.02, subd. 38(b), was not satisfied by mere possession, and (2) Crossroads did not acquire equitable or legal title sufficient to have "acquired" the property before the cutoff deadline of July 1, 2008, under Minn.Stat. § 272.02, subd. 38(b). Accordingly, the court held that Crossroads was not entitled to a 2008 exemption for the Burnsville property. *Crossroads,* 2010 WL 1558557, at *7–10. Crossroads appealed the tax court's decision to our court.

## I.

■■■ We review the tax court's decision to determine whether "the decision is supported by the evidence and is in conformity with the law." *Jefferson v. Comm'r of Revenue,* 631 N.W.2d 391, 394

(Minn.2001). We review questions of law de novo. *See Burns v. Comm'r of Revenue,* 787 N.W.2d 164, 166 (Minn.2010); *F– D Oil Co., Inc. v. Comm'r of Revenue,* 560 N.W.2d 701, 704 (Minn.1997). The construction of a statute is a question of law. *Clark v. Lindquist,* 683 N.W.2d 784, 785 (Minn.2004). "When interpreting statutes that exempt property from taxation, we adhere to the proposition that 'taxation is the general rule and exemption the exception.' " *ILHC of Eagan, LLC v. Cnty. of Dakota,* 693 N.W.2d 412, 419 (Minn.2005) (quoting *Chateau Cmty. Housing Ass'n, Inc. v. Cnty. of Hennepin,* 452 N.W.2d 240, 242 (Minn.1990)). Accordingly, any exemption from a taxation provision is to be strictly construed. *Ideal Life Church of Lake Elmo v. Cnty. of Washington,* 304 N.W.2d 308, 313 (Minn.1981) (quoting *Camping & Educ. Found. v. State,* 282 Minn. 245, 250 164 N.W.2d 369, 372 (1969)). The presumption is that all property is taxable and the party who seeks exemption bears the burden of proof. *Christian Bus. Men's Comm. of Minneapolis, Inc. v. State,* 228 Minn. 549, 555, 38 N.W.2d 803, 809 (1949).

Minnesota law provides for tax exemption for churches and church property. The Minnesota Constitution provides that "churches, church property, houses of worship, ... shall be exempt from taxation...." Minn. Const. art. X, § 1. Minnesota Statutes § 272.02, subd. 6 (2010),

(2010), which provides for a waiver of the payment of taxes during the pendency of a tax appeal petition upon a showing of hardship in its motion for summary judgment, the parties stipulated on October 28, 2009, to transfer the case to the district court for immediate referral back to the tax court pursuant to *Erie Mining Company v. Commissioner of Revenue,* 343 N.W.2d 261, 264 (Minn.1984). The district court immediately transferred the case back to the tax court, and the tax court did not rule on the constitutional issue.

The Minnesota Tax Court does not have jurisdiction to hear the portion of an appeal that challenges the constitutionality of a statute unless the appeal is referred to it by the district court. Therefore, the portion of an appeal presenting such an issue must be referred to the district court for decision or referral back to the Minnesota Tax Court. *In re McCannel,* 301 N.W.2d 910, 919 (Minn. 1980); *Gonzales v. Comm'r of Revenue,* 706 N.W.2d 909, 911 (Minn.2005).

provides that: "All churches, church property, and houses of worship are exempt." A transfer of property from a taxable entity to an exempt entity is governed by Minn.Stat. § 272.02, subd. 38(b), which provides:

> Property, except property taxed as personal property under section 273.125, that is subject to tax on January 2 *that is acquired before July 1* of the year is exempt for that assessment year if the property is to be used for an exempt purpose under subdivisions 2 to 8.

(Emphasis added.)

It is undisputed that the Burnsville property that was purchased by Crossroads is to be used for an exempt purpose—a church. Therefore, the issue before us is whether Crossroads "acquired" the property for purposes of Minn.Stat. § 272.02, subd. 38(b), before July 1, 2008. The term "acquired" as used in Minn.Stat. § 272.02, subd. 38(b), is not defined by statute or caselaw. The County argues that Crossroads did not acquire legal or equitable title to the Burnsville property before the September 8, 2008, closing. Crossroads argues that it had equitable title before July 1, 2008, and therefore is entitled to an exemption for 2008. Crossroads does not argue that it had legal title before July 1, 2008, and concedes that possession is not sufficient to satisfy Minn. Stat. § 272.02, subd. 38(b).

■ Crossroads asserts that the oral understanding reached with Heise & Heise in March was sufficient to transfer equitable title to the Burnsville property from Heise & Heise to Crossroads. Equitable title is "a title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title." *Black's Law Dictionary* 1493 (9th ed.1999); *see also Jackson v. Mortg. Electr. Registration Sys., Inc.,* 770 N.W.2d 487, 497 (Minn.2009). Crossroads has offered evidence that an oral understanding existed before July 1 and asserts that this oral understanding was memorialized by the draft purchase agreement, which was drafted on March 8, 2008, but not executed until August 28. Given this unrefuted assertion, we will proceed to determine if any oral understanding or agreement was void and thereby failed to transfer equitable title because of the statute of frauds or the presence of unfulfilled conditions.

### Statute of Frauds

■ Under the statute of frauds, "[e]very contract for ... the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made...." Minn.Stat. § 513.05 (2010). Crossroads has not shown that any *signed* writing was in effect before July 1, 2008. Therefore, unless an exception to the statute of frauds applies, Crossroads could not have obtained formal legal title under its oral understanding with Heise & Heise before July 1. Crossroads suggests that the oral understanding or agreement it had with Heise & Heise is not subject to the statute of frauds. Crossroads also asserts that its actions to have the property rezoned for use as a church constituted an "improvement." Crossroads argues that this improvement, along with the "giving of the earnest money," is sufficient to take its oral understanding outside of the statute of frauds. We conclude that this argument lacks merit.

■ A contract may be taken out of the statute of frauds by part performance. *Gallagher v. Moffet,* 233 Minn. 330, 332, 46 N.W.2d 792, 793 (1951). In some situations, the necessary part performance may be established by taking possession and making payment. *Formanek v. Langton,*

271 Minn. 59, 63–64, 134 N.W.2d 883, 886 (1965). The underlying principle is that, when one of the contracting parties has relied on an oral agreement to such an extent that it would be a fraud on the part of the other contracting party to void the agreement, equity will make that agreement an exception to the statute of frauds. *See, e.g., Hecht v. Anthony*, 204 Minn. 432, 435, 283 N.W. 753, 754 (1939).

■■■ The mere act of taking possession of land, however, is insufficient to avoid application of the statute of frauds. *Hatlestad v. Mut. Trust Life Ins. Co.*, 197 Minn. 640, 648, 268 N.W. 665, 669 (1936) (holding that the doctrine of part performance ordinarily can be successfully invoked if the vendee took possession of the land and made valuable improvements, but noting that mere possession is usually insufficient). The purchaser must also make valuable improvements, or pay part of the purchase price. *See Formanek*, 271 Minn. at 63–64, 134 N.W.2d at 886 (holding that where purchaser had taken possession and paid part of the purchase price, the statute of frauds did not bar enforcement of a purchase agreement); *Bouten v. Richard Miller Homes, Inc.*, 321 N.W.2d 895, 900 (Minn.1982) ("[T]he doctrine of part performance ordinarily can be successfully invoked if the vendee took possession of the land and made valuable improvements thereon.").

Crossroads asserts that it made valuable improvements to the Burnsville property by changing the zoning. Without deciding whether rezoning constitutes an improvement to property for purposes of avoiding the statute of frauds, we conclude that Crossroads' argument fails because rezoning was not completed until after July 1, 2008—more specifically, not until July 8, 2008. Moreover, because City of Burnsville staff recommended a denial of Crossroads' rezoning petition, there was sub-stantial uncertainty up until July 8 as to whether the Burnsville City Council would approve the rezoning; but, in any case, the rezoning was not completed until July 8.

Crossroads also argues that it paid part of the purchase price when it gave a $10,000 check to EFH on April 29, 2008. However, Crossroads' check was held by EFH until placed in escrow on August 25, 2008, three days before the execution of the purchase agreement. The check was not given to Heise & Heise until the closing on September 8. Moreover, Heise & Heise was not entitled to the check until that time because the purchase agreement provided that the earnest money would be paid on the date of closing. Therefore, we conclude that Crossroads did not pay any part of the purchase price until the actual closing on September 8, 2008. Because Crossroads did not improve the property by completing the rezoning or pay any part of the purchase price before July 1, 2008, we conclude that it did not have equitable title before that date.

*Unfulfilled Conditions*

■■■ We also conclude that because several conditions of Crossroads' oral understanding remained unfulfilled as of July 1, 2008, Crossroads could not have had equitable title to the Burnsville property on that date. Under general contract law, unfulfilled conditions prevent enforcement of a contract. We have said that:

> A condition precedent ... is one which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend.

*Lake Co. v. Molan*, 269 Minn. 490, 498–99, 131 N.W.2d 734, 739–40 (1964) (citing

*Chambers v. Nw. Mut. Life Ins. Co.*, 64 Minn. 495, 497, 67 N.W. 367, 368 (1896)).

Crossroads asserts that it waived such conditions precedent as might have prevented the terms of the unsigned draft purchase agreement from being fulfilled. But Crossroads fails to provide any evidence that the conditions were either orally waived, or waived in writing as required by the draft purchase agreement. Moreover, the conditions precedent were not fulfilled by July 1. Specifically, the zoning petition had not been granted and two other transactions that were part of the exchange had not taken place by July 1. Given the fact that several conditions of Crossroads' oral understanding were unfulfilled as of July 1, we conclude that Crossroads did not have the right to acquire formal legal title and did not have equitable title on July 1.

Even if Crossroads' alleged oral agreement were enforceable, we have never held that such an oral short-term executory contract is sufficient to pass equitable title for taxation purposes. Crossroads relies primarily on *Vill. of Hibbing v. Comm'r of Taxation*, 217 Minn. 528, 14 N.W.2d 923 (1944), to support its argument. In *Hibbing*, a village appealed the tax court's conclusion that a building was exempt from taxation. *Id.* at 532, 14 N.W.2d at 925. Legal title to the building was held by the vendor—a non-exempt entity—on the date of taxation. *Id.* at 530, 14 N.W.2d at 925. But the building had been sold by the non-exempt entity to the exempt entity and was in the executory phase of the contract until the vendee adapted and fitted the building as a public hospital and made certain contributions to the purchase price. *Id.* at 532, 14 N.W.2d at 925. We concluded that, despite the fact that the exempt entity did not have legal title, it was the "owner" for taxation purposes. *Id.* at 533–34, 14 N.W.2d at 926 ("While an executory contract for a sale or conveyance of land conveys in law no legal title, in equity the purchaser is regarded, *for purposes of taxation as well as for others,* as the owner, subject to liability for the unpaid price, and the vendor as holding legal title in trust for him." (emphasis added)).[3]

■■■ Crossroads correctly points out that many courts, including Minnesota courts, have held that an executory contract can pass equitable title sufficient to establish acquisition for tax purposes.[4] But the taxation cases relied on by Crossroads establish only that equitable title may be sufficient to establish acquisition for tax

3. We suggested that our holding rested in part on the fact that the property was used for an exempt purpose during the contract's executory period. *Hibbing*, 217 Minn. at 535, 14 N.W.2d at 926. To the extent that use, rather than ownership, was an important factor in this court's holding in *Hibbing*, Crossroads' reliance on the *Hibbing* is even less appropriate.

4. *See Petition of S. R. A., Inc.*, 213 Minn. 487, 499–500, 7 N.W.2d 484, 490 (1942) (holding that where a purchaser of realty from the United States under a contract for deed giving the purchaser a contractual interest in and equitable title had taken possession of the realty and was using it as a commercial enterprise, the purchaser's interest was subject to taxation); *Hibbing*, 217 Minn. at 533–34, 14 N.W.2d at 926; *see also Ritchie v. City of Green Bay*, 215 Wis. 433, 254 N.W. 113, 115 (1934) (holding where exempt organization was in possession of real property under land contract obligating organization to pay the purchase price and use land for exempt purpose, the association was the "owner" of the land within the meaning of the statute). *But see, e.g., People ex rel. Thompson v. St. Francis Xavier Female Acad.*, 233 Ill. 26, 84 N.E. 55–57 (1908) (holding the fact that an exempt owner who acquired legal title after date when liability for current taxes had accrued was the equitable owner did not make the exemption applicable).

purposes in the context of a contract for deed or similar document. That is not the fact situation we have here. In a contract for deed, the buyer "is clothed with the indicia of ownership to the same extent as if he had taken a deed and given a purchase money mortgage." *In re S. R. A.*, 213 Minn. 487, 495, 7 N.W.2d 484, 488 (1942). Such indicia of ownership were totally lacking in the understanding/agreement that Crossroads asserts exists here. Before July 1, there was no written purchase agreement, several conditions remained unfulfilled, and Crossroads was not, by the terms of any agreement either oral or written, entitled to possession.

We conclude that Crossroads has failed to establish that, as of July 1, 2008, it acquired sufficient equitable title to show an acquisition of the Burnsville property for tax purposes under Minn.Stat. § 272.02, subd. 38(b). Thus, Crossroads did not "acquire" the Burnsville property within the meaning of Minn.Stat. § 272.02, subd.38 (b), before July 1 and is not entitled to an exemption for taxes assessed in 2008 and payable in 2009. Accordingly, we hold that the tax court did not err when it denied Crossroads an exemption under the statute by granting the County's motion for summary judgment.

## II.

■ Crossroads raises three other issues. First, it argues that the requirement in Minn.Stat. § 278.03, subd. 1(3), that churches establish financial hardship in order to avoid paying property taxes while an appeal is being prosecuted is unconstitutional. Section 278.03, subdivision 1, provides that a petitioner may apply to the court to be allowed to prosecute a tax appeal petition without payment of taxes when the review is taken in good faith, there is probable cause to believe that the property will be held exempt, and it would cause hardship for the petitioner to pay the taxes due. Crossroads argues that requiring churches to establish financial hardship constitutes excessive government entanglement with religion.

■ We conclude that Crossroads' argument is moot, and we ordinarily do not review an issue that is rendered moot by subsequent events. *Muggenburg v. Leighton*, 240 Minn. 21, 25, 60 N.W.2d 9, 11 (1953) (citation omitted). Relying on its conclusion that Crossroads was not likely to prevail on its exemption claim, the tax court ruled that Crossroads was not entitled to prosecute its petition without payment of taxes. Because we affirm the tax court's rejection of Crossroads' exemption claim, Crossroads can no longer establish the second requirement for waiver, i.e., that there is probable cause to believe that the property will be held exempt. Therefore, Crossroads cannot fulfill the criteria for waiver of tax payments, regardless of whether we hold unconstitutional the requirement in Minn.Stat. § 278.03, subd. 1(3), that churches establish financial hardship. Accordingly, Crossroads' claim presents a moot question that we need not review.

■ Crossroads' second argument is that the tax court's decision violated its freedom of contract, and its third argument is that Minn.Stat. § 272.02, subd. 38(b), violates Article 10, Section 1, of the Minnesota Constitution. We will not consider on appeal issues not raised before or addressed by the tax court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (holding that a reviewing court will not address those issues not raised below, or not addressed by the trial court). We have examined Crossroads' submissions to the tax court and conclude that it did not raise its freedom of contract or constitutionality of Minn.Stat. § 272.02, subd. 38(b), arguments before the tax court and

that the court did not address either issue. Accordingly, we decline to consider Crossroads' freedom of contract argument and its argument that Minn.Stat. § 272.02, subd. 38(b), violates the Minnesota Constitution.

Affirmed.

PAGE, Justice (concurring).

While I concur in the court's reasoning and in the result reached, I write separately to highlight a concern with one of the issues not timely raised by Crossroads Church. That issue is the constitutionality of the application of Minn.Stat. § 272.02, subd. 38(b), to the facts of this case. The Minnesota Constitution expressly provides that "all churches, church property, houses of worship ... shall be exempt from taxation." Minn. Const. art. X, § 1. To the extent that section 272.02, subdivision 38(b), authorizes taxation of the property in question here after the property was acquired by Crossroads Church, it would seem that the statute's constitutionality is called into question.