**James W. TROLLEN, d.b.a. Trollen Marine, Respondent,**

v.

**CITY OF WABASHA, Appellant.**

**No. 49627.**

Supreme Court of Minnesota.

Dec. 28, 1979.

Gartner, Burkhardt, Shulman & Ekstrand and Peter D. Ekstrand, Wabasha, for appellant.

VanEps & Gilmore, Warren P. Eustis, and Andrew T. Shern, Minneapolis, for respondent.

Heard before OTIS, ROGOSHESKE, and WAHL, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

Defendant lessor, City of Wabasha, appeals from an order of the district court denying its alternative post-trial motion in an action commenced by lessee, James W. Trollen, for declaratory judgment. The principal issue raised is whether the trial court erred by concluding that equity relieved the lessee from strict compliance with a lease provision requiring that notice to extend the lease be given 6 months prior to the termination of the rental period. We find no error and, accordingly, we affirm.

In September 1967, Trollen purchased certain real and personal property related to a marina operation from Minnetonka Boat Works, then operator of the Wabasha Marina. The real property consisted of two city lots across the street from the municipal harbor upon which a boat repair shop and manager's apartment were located. The personal property included a gas dock system, walkways, a hoist, a tractor, and miscellaneous tools. The purchase price was $50,000.

Shortly thereafter, Trollen entered a 5-year written lease of the shoreline and shoreline water rights with the City of Wabasha, commencing August 1, 1967. The lease gave Trollen the option of extending the agreement for two consecutive 5-year periods upon "six months notice of * * * exercise of said option prior to the termination of the rental period."

From 1967 to 1972 Trollen improved the marina facilities by replacing walkways,

constructing a new gas dock, adding and replacing boat docks, purchasing additional land near the harbor, and building an outboard motor repair shop which he leased to an independent contractor. Certain other improvements were made at the city's expense, including sewer work and filling.

On September 7, 1972, Trollen attended a city council meeting and requested an extension of the 1967 lease. Trollen was unaware that any formal act was required to extend the lease, and the city did not draw his failure to comply with the notice requirement to his attention. At the meeting the parties entered a new lease commencing August 1, 1972, with provisions identical to the 1967 lease except that an additional 5-year extension at an increased rental was agreed to.

From 1972 to 1977 Trollen's relationship with the city council deteriorated. Disputes arose due to the city's alleged inadequate policing of the harbor area in light of increased recreational use. Trollen wrote various letters to the city council complaining about increased and uncontrolled boat traffic due to persons using the city-owned campground bordering on the harbor, campers swimming in restricted areas of the harbor, and unauthorized use of harbor parking facilities by campers. In these letters he also expressed concern about his own investment, which he felt to be threatened unless plans for expansion were formulated. Trollen informed the city that he was taking a "wait-and-see" attitude regarding further improvements.

In the spring of 1976, Trollen learned that a parcel of land he was using for marina parking purposes actually belonged to the Chicago, Milwaukee, St. Paul and Pacific Railroad and not the city. A representative of the railroad informed him that the unauthorized use created liability problems and suggested that arrangements be made for Trollen to purchase the property. Trollen brought the problem to the attention of two aldermen but never formally addressed the city council. After further negotiations with the railroad, Trollen leased the property for 5 years commencing June 1, 1977, at a rental of $300 per year.

On April 7, 1977, the city informed Trollen by letter that he had failed to give proper notice to extend the lease. In that same letter the city indicated its willingness to negotiate a new lease. Trollen responded immediately, stating that he was "unaware of the timing" and that he intended to continue under the old lease. Reserving his rights, Trollen negotiated with the city until the winter of 1978. No agreement was reached, and Trollen commenced this action.

The city contends that the trial court did not apply the proper rule of law in concluding that the lease was extended. Our review of the authorities indicates that courts have taken two different positions on this issue. The older rule advocated by the city is that where a lessee has a right to extend a lease provided he gives the lessor notice by a specific time that he intends to exercise that right, the giving of notice is a condition precedent which must be complied with. If the lessee fails to comply, the lease expires by its own limitation and the lessor is entitled to possession. Courts adopting this view reason that time is of the essence of an option and apply this rule of strict construction in law and equity. 3 Thompson, Real Property § 1122 (1955 repl.).

█ The modern rule, applied by the trial court, permits a court of equity to relieve against loss of an option to extend a lease where there has been excusable and inconsequential tardiness. The rule has been most clearly stated in *F. B. Fountain Co. v. Stein*, 97 Conn. 619, 624, 118 A. 47, 49, 27 A.L.R. 976, 979 (1922):

The foundation upon which the claim of plaintiff for equitable relief rests is that the failure of plaintiff to give the thirty-day notice was mere forgetfulness, which at most is negligence, and that nothing short of wilful,—that is voluntary—gross, or inexcusable neglect would prevent equitable relief under the circumstances of this case. When the failure to give a notice which is a condition precedent to the renewal of a lease results from accident, fraud, surprise, or mistake,

equity will relieve. These grounds of relief are the well-recognized aids to equitable interposition, and their application has been definitely determined. Neither is applicable to a case where the failure is due to mere forgetfulness without other considerations. While these are the ordinary grounds for equitable relief for such failure, they are not the exclusive grounds. All authorities agree that such relief cannot be afforded where the failure has been due to wilful or gross negligence. They differ as to whether such relief can be afforded in cases of mere negligence, as by forgetfulness.

  *   *   *   *   *   *

We think the better rule to be that, in cases of wilful or gross negligence in failing to fulfill a condition precedent of a lease, equity will never relieve. But in cases of mere neglect in fulfilling a condition precedent of a lease, which do not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease.

Other jurisdictions have followed this rule. See *J. N. A. Realty Corp. v. Cross Bay Chelsea, Inc.*, 42 N.Y.2d 392, 397 N.Y.S.2d 958, 366 N.E.2d 1313 (1977); *Sosanie v. Pernetti Holding Corp.*, 115 N.J.Super. 409, 279 A.2d 904 (1971); *Dugan v. Haige*, 54 So.2d 201 (Fla.1951); *Application of Topp*, 81 N.Y.S.2d 344 (Sup.1948); *see generally* 44 A.L.R.2d 1359; 27 A.L.R. 981. We adopt the *Fountain* rule.

The city next contends that the facts of this case do not bring it within the *Fountain* rule. We do not agree. First, there is no evidence that Trollen's conduct was willfully or grossly negligent. The record indicates, as the trial court found, that his reasonable reliance on the past course of dealings between himself and the city led him to neglect ascertaining his formal obligations under the lease. Second, the delay was relatively slight, since Trollen gave unequivocal written notice of his intention to extend the lease with 4 of the 6 months of the notice period remaining. Third, the city was not prejudiced by the delay. There was no assertion that Trollen had violated any of the lease terms nor had the city entered negotiations or an agreement with a different tenant. Furthermore, there was no evidence that a higher rental could have been obtained; indeed, the record indicates that the rental paid by Trollen was slightly higher than that paid for comparable marinas. Fourth, Trollen would suffer sufficient hardship to render literal enforcement of the notice provision unconscionable. There was undisputed testimony that, at a minimum, 15 years' operation is required to recoup investment in marina equipment. The value of the personal property would be significantly reduced if it were removed or if sold at what would be, in essence, a forced sale to a new operator. Trollen has also committed himself to lease the railroad property and, finally, would forfeit the good will he has established over the years. The trial court's findings that the elements of *Fountain* are satisfied are, therefore, not clearly erroneous. Moreover, we believe that the city was afforded a fair opportunity to litigate these questions and, absent a showing to the trial court on post-trial motions or before us at oral argument of what evidence could be presented that would not justify equitable relief, we decline to grant a new trial.

Affirmed.