John J. CAPISTRANT, Appellant,

v.

LIFETOUCH NATIONAL SCHOOL STUDIOS, INC., Respondent.

A16-1829

Court of Appeals of Minnesota.

Filed July 3, 2017

Paul R. Smith, John A. Kvinge, Nic S. Puechner, Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, Minnesota (for appellant).

Charles F. Knapp, Aaron D. Van Oort, Marjan A. Batchelor, Lauren W. Linderman, Faegre Baker Daniels LLP, Minneapolis, Minnesota; and Joel P. Schroeder, Best & Flanagan LLP, Minneapolis, Minnesota (for respondent).

Considered and decided by Cleary, Chief Judge; Kirk, Judge; and Toussaint,

Judge.*

## OPINION

CLEARY, Chief Judge

On appeal from the district court's entry of judgment in favor of respondent-employer Lifetouch National School Studios Inc. (Lifetouch), appellant-employee John J. Capistrant argues that the district court erred by (1) granting summary judgment in favor of Lifetouch based on impermissible factual determinations, (2) enforcing a forfeiture clause in a non-compete agreement, absent harm to Lifetouch, and (3) failing to determine the correct method of calculating the residual commission due under the employment contract's non-compete agreement. The district court did not err in determining that there were no genuine issues of material fact as to whether Capistrant immediately returned Lifetouch's property. However, because the employment contract's terms allowed forfeiture of Capistrant's residual commission disproportionate to Lifetouch's harm, we reverse. We remand so that the district court can determine the correct method of calculating the residual commission that Lifetouch owes to Capistrant.

## FACTS

Capistrant began working at Lifetouch in 1980 in its Minneapolis office. In 1981, Lifetouch transferred Capistrant to work as a photographer and sales representative in California under a Lifetouch territory manager. When that territory manager retired in 1986, Lifetouch broke up the manager's territory and Capistrant took over as the territory manager in the San Francisco Bay Area.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

On June 30, 1986, Capistrant and Lifetouch executed the "Territory Manager Employment Agreement" (the contract). The contract provided that Capistrant would manage a certain territory in exchange for compensation, as defined and calculated in exhibits attached to the contract.

Under one exhibit attached to the contract, Lifetouch was to compensate Capistrant entirely with "commissions," which were defined as "the percentage of New Sales Receipts set forth in this paragraph," minus chargebacks and other charges. This exhibit provided that during the first 72 months of the contract, Capistrant would receive 37.5% "not in excess of the Commission Base," which in turn was defined as the net sales receipts of the prior territory manager during the fiscal year ending on or before the effective date of the contract. The exhibit also provided that Capistrant would receive a reduced 35% commission from business that Lifetouch transferred to him from previous territory managers. After 72 months of reduced commissions, Capistrant would receive a 40% commission rate.

The contract contained a non-compete agreement stating:

**11. Restriction Against Competition.**

. . . .

Territory Manager agrees that during the Term and for twenty-four (24) months following the end of the Term, Territory Manager shall not:

A. Disclose any trade secrets and confidential information of Lifetouch, including Lifetouch's school and customer lists and merchandising techniques, to any person, firm, corpora-

Minn. Const. art. VI, § 10.

tion, association or other entity for any reason or purpose whatsoever.

B. Directly or indirectly, either as an individual for Territory Manager's own account, or on behalf of another person or persons, corporation, partnership or other entity, solicit or deal with any school included in Lifetouch's Business whom Territory Manager solicited or serviced while in the employ of Lifetouch or whom Territory Manager knew to be a customer of Lifetouch or any of Lifetouch's affiliates.

C. Directly or indirectly, either as an individual for Territory Manager's own account, or on behalf of another person or persons, corporation, partnership or other entity, solicit any present or future employee of Lifetouch for the purpose of hiring or attempting to hire such employee.

Two additional and unnumbered provisions at the end of Paragraph 11 provide:

In the event that Territory Manager shall violate any of the provisions of this section, then Lifetouch shall have the right to seek injunctive relief and any other remedy allowed to it in law or equity or by this Agreement.

At the end of the Term, Territory Manager shall immediately deliver to Lifetouch all of Lifetouch's property ..., products, merchandise, and all originals and copies of business forms, school or customer lists, shooting schedules, financial statements and any and all other written or printed material in Territory Manager's possession or control and belonging to Lifetouch.[1]

Lifetouch expanded Capistrant's territory a number of times throughout his employment, including on July 1, 1991, May 29, 2003, and July 26, 2004. Each time the parties would amend and execute the contract exhibit describing the territory. Capistrant understood that, like the territory he initially obtained in 1986, the territories that he subsequently obtained while a territory manager were subject to a "65/35 split" for a period of 72 months. Capistrant understood that this meant he would take a reduced commission of 35% (instead of the full 40%) on added territories in order to "buy into" each territory. Capistrant agreed at his deposition that after the "buy-in" period, the added territories would be included in the residual-commission calculation. Lifetouch had similar "buy-in" agreements with other territory managers.

While still employed at Lifetouch, Capistrant disputed how Lifetouch calculated his residual commission. Exhibit B, Section III, of the contract, providing for "Residual Commission and Payments for Restriction Against Competition," reads:

If Territory Manager has duly performed all of Territory Manager's obligations under the Agreement and under any prior Territory Manager Employment Agreement between the parties for a period of at least 6 Fiscal Years prior to the end of the Term, following the end of the Term, Lifetouch shall pay to Territory Manager a Residual Commission equal to 30% of Net Sales Receipts in the Territory during the last Fiscal Year before the end of the Term....[2]

In consideration for payments of Residual Commission to Territory Manager, Territory Manager agrees that the provisions of Paragraph 11 [the noncompete agreement] of the Agreement shall be extended and shall apply during

---

1. We later refer to this provision as the return-of-property clause.

2. We later refer to this provision as the residual-commission clause. This clause creates a condition precedent.

the period Territory Manager is entitled to receive Residual Commission payments. If at any time Territory Manager breaches the provisions of Paragraph 11 of the Agreement, in addition to Lifetouch's other remedies, Lifetouch shall be entitled to terminate Lifetouch's obligation to make any payments of Residual Commission that have not yet been paid by giving Territory Manager written notice of such termination.[3]

Lifetouch proposed replacing the 1986 contract with a new Territory Manager Employment Agreement with an effective date of November 2003. The proposed contract included a new version of the contract exhibit describing Capistrant's territory that explicitly excluded net sales receipts from transferred territories from the calculation of Capistrant's commissions under the residual-commission clause. Capistrant did not agree to this change and refused to sign the proposed contract.

In 2014, Lifetouch's calculation of Capistrant's residual commission was $1,208,402. Lifetouch excluded from its calculation the net sales receipts from certain transferred territories to which Capistrant failed to "buy in." Capistrant claims that without Lifetouch's improper exclusion of the transferred territories, the net sales at the end of fiscal year 2014 would have been $8,743,069, resulting in a total residual commission of $2,622,920.70.

On September 29, 2014, before retiring, Capistrant commenced a declaratory-judgment action in district court requesting a declaration of the rights and duties of the parties under the contract and "the proper calculation of the Residual Commissions due to Capistrant."

March 31, 2015, was Capistrant's last day at Lifetouch before retiring. A regional director, who was on site, collected a Lifetouch-issued laptop, a company credit card, and building keys from Capistrant. The director did not ask for documents or anything that Capistrant might have at home. The director allowed Capistrant to forward personal e-mails from his work e-mail to a personal e-mail address. Capistrant and his wife forwarded several business-related documents via e-mail to Capistrant's personal e-mail account, including customer lists, business strategy documents, and financial information.

In April 2015, Lifetouch counterclaimed for a declaratory judgment and subsequently asserted several other claims not relevant to this appeal.

Lifetouch served discovery on Capistrant in May 2015, and Capistrant responded on June 25, 2015, disclosing that he had forwarded certain documents via e-mail on his last day of employment. The following day, Capistrant disclosed to Lifetouch that he had several banker's boxes that contained approximately 19,000 pages of documents, including customer lists, sales data, payroll records, financial statements, and business plans. Capistrant claims that he accumulated the documents over the years he worked at Lifetouch, and that he stored the documents in his attic. Lifetouch asserts that the documents are its property and that Capistrant violated the return-of-property clause in the contract. Lifetouch received the boxes of documents by July 1, 2015, and Capistrant's attorneys blocked Capistrant from accessing his personal e-mail account and allowed Lifetouch access to inspect the account.

The parties each moved for summary judgment on their declaratory-judgment claims. On May 12, 2016, the district court granted summary judgment on the declaratory-judgment claims in favor of Life-

---

**3.** We later refer to the last sentence of this provision as the forfeiture clause.

touch, determining that Capistrant's failure to immediately return Lifetouch's property constituted an unfulfilled condition precedent, excusing Lifetouch from performing its duty to pay Capistrant a residual commission.

On October 11, 2016, the parties entered into a stipulated injunction whereby Lifetouch's additional counterclaims were dismissed. Judgment in favor of Lifetouch was entered the next day. Capistrant now appeals.

## ISSUES

I. Did the district court err by determining that there were no genuine issues of material fact as to whether Capistrant failed to immediately return Lifetouch's property at the termination of the contract?

II. Did the district court err by enforcing a forfeiture clause in a non-compete agreement based on Capistrant's failure to fulfill a condition precedent?

III. Should this court determine the correct method of calculating the residual commission under the contract's terms?

## ANALYSIS

### I. Genuine Issues of Material Fact

Capistrant argues that the district court erred in finding that there were no genuine issues of material fact as to whether Capistrant immediately returned Lifetouch's property. We disagree.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, appellate courts review de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law to the facts. *Commerce Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015). The evidence is viewed in the light most favorable to the party against whom summary judgment was granted. *Id.* No genuine issue of material fact exists for trial where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (quotation omitted).

■ The district court determined that no reasonable jury could find that Capistrant returned the proprietary documents "immediately" as required by the contract. "Immediately" is an unambiguous term and means "[w]ithout delay." *American Heritage College Dictionary* 679 (3d ed. 1997). Capistrant returned the documents about three months after the termination of his contract. This is not immediate. The district court did not err.

■ The district court also did not err in determining that no reasonable jury could find that Capistrant reasonably believed the documents and e-mails that he retained were his property, as Capistrant maintained at his deposition. The contract broadly describes Lifetouch's property as "written or printed material in [Capistrant's] possession or control and belonging to Lifetouch." Documents that Capistrant retained at home were labeled "CONFIDENTIAL—Property of Lifetouch National School Studios." On Capistrant's final day of employment, he forwarded documents containing Lifetouch's proprietary information to his personal e-mail account.

■ Capistrant claimed that he believed the documents were his property because he was not asked to return them. But, this is contrary to the language of the contract. Capistrant could not otherwise clearly articulate why he thought the documents were his property. "[T]he party resisting summary judgment must do more than rest on mere averments." *DLH*, 566 N.W.2d at 71. Capistrant's statements were mere averments.

Although we conclude that the district court did not err in finding there were no genuine issues of material fact as to whether Capistrant immediately returned the property, this does not end our analysis, because we must determine the legal effect of these facts.

## II. Forfeiture of the Residual Commission

Capistrant argues that the district court erred by determining on summary judgment that he forfeited residual commissions that he claims are worth approximately $2.6 million, in the absence of any harm to Lifetouch.

■ The same summary-judgment standards apply. Additionally, "[a] contract's construction and its legal effect are questions of law for the court," and this court need not defer to the district court's determination of a legal question. *Lakeview Terrace Homeowners Ass'n v. Le Rivage, Inc.*, 498 N.W.2d 68, 72 (Minn.App. 1993).

In granting summary-declaratory judgment in favor of Lifetouch, the district court determined as a matter of law that, under the express terms of the contract, Lifetouch was excused from paying Capistrant a residual commission because Capistrant failed to fulfill the condition precedent of immediately returning Lifetouch's property upon termination of the contract.

In challenging this ruling, Capistrant argues specifically that (1) the forfeiture clause is a penalty clause, rather than an enforceable liquidated-damages clause; (2) under Minnesota law and the Restatement (Second) of Contracts, temporary delays in performance are excused to the extent necessary to prevent disproportionate forfeiture, and the forfeiture clause is unenforceable as part of an overbroad non-compete agreement; and (3) the language of the contract can be reasonably construed to avoid forfeiture.

### A. Liquidated Damages

Capistrant first argues that the clause forfeiting his residual commission is an unenforceable penalty because Lifetouch's damages are capable of calculation and the forfeiture of the residual commission is not a reasonable estimate of Lifetouch's damages.

■ Liquidated damages are fixed sums, agreed to in advance, that the breaching party pays to the non-breaching party when (1) "the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach," and (2) actual damages are difficult to ascertain. *Gorco Constr. Co. v. Stein*, 256 Minn. 476, 482, 99 N.W.2d 69, 74-75 (1959) (quoting Restatement (First) on Contracts § 339).

■ While we agree with Capistrant that the contract clauses in question do not form an enforceable liquidated-damages clause, we disagree that the forfeiture clause is a penalty clause under the rubric of law surrounding liquidated damages. Penalty clauses are found "when the measure of damages resulting from a breach of contract is susceptible of definite measurement," and the agreed-to sum is disproportionate to the measure of damages. *Gorco Constr.*, 256 Minn. at 483, 99 N.W.2d at 75. Here, the law surrounding liquidated-dam-

ages clauses and penalties does not quite fit because the measure of damages from Capistrant breaking the non-compete agreement is not susceptible to definite measurement. Further, the contract does not evince an intent by parties that the forfeiture clause be a fixed amount of damages prior to a breach. The law surrounding disproportionate forfeitures and non-compete agreements is more applicable to this case.

### B. Disproportionate Forfeiture Within a Non-Compete Agreement

■ Capistrant argues that his failure to immediately return Lifetouch's property should be excused because, under Minnesota law, temporary delays in performance are excused to the extent necessary to prevent disproportionate forfeiture, and because the forfeiture clause is part of an overbroad non-compete agreement. We agree.

### 1. Condition Precedent

■ As a threshold matter, Lifetouch argues that the return-of-property clause is simply a confidentiality clause and should not be analyzed as part of a non-compete agreement because it is not a restraint on trade. The issue here is whether the contract provisions in question should be analyzed as a condition precedent, as a non-compete with a forfeiture clause, or as both. Lifetouch argues that employers are entitled and compelled to take reasonable steps to protect their confidential information, and that requiring employees to return property when they leave is commonplace. While Lifetouch is correct that the return-of-property clause on its own is not a restraint on future trade, Lifetouch ignores the structure of the contract. Under the contract, the return-of-property clause is under the heading "Restriction Against Competition," and Capistrant's residual commission, which was labelled as a payment for not competing, was conditioned on Capistrant returning documents containing confidential information, such as customer lists, which would have facilitated Capistrant in competing. The return-of-property clause is a part of the non-compete agreement in the contract.

■ Lifetouch also argues that this court, like the district court, should analyze the return-of-property clause as an unfulfilled condition precedent, rather than a non-compete agreement. "A condition precedent ... is any fact or event, subsequent to the making of a contract, which must exist or occur before a duty of immediate performance arises under the contract." *Nat'l City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 176-78 (Minn. 1989). "Under general contract law, unfulfilled conditions prevent enforcement of a contract." *Crossroads Church of Prior Lake MN v. County of Dakota*, 800 N.W.2d 608, 615 (Minn. 2011). In *Nat'l City Bank of Minneapolis*, the Minnesota Supreme Court determined that, under an insurance contract, a condition precedent must be fulfilled before a duty of immediate performance arises. 447 N.W.2d at 176-78.

Here, the district court determined that the return-of-property clause in the non-compete agreement of the contract (Paragraph 11), created a condition precedent to Lifetouch's duty to pay Capistrant any residual commission. The district court did not err in this determination because under the residual-commission clause in Exhibit B, Section III, Lifetouch's duty to pay Capistrant the residual commission arises "[i]f [Capistrant] has duly performed all of [his] obligations under the Agreement ... for a period of at least 6 Fiscal Years prior to the end of the Term."

The district court determined that, because there was no genuine issue of material fact as to whether Capistrant immediately returned Lifetouch's property, the condition was unfulfilled and Lifetouch had no duty to pay Capistrant a residual commission.[4]

While Capistrant's duty to follow the obligations listed under Paragraph 11 is a condition precedent to Lifetouch's duty to pay him his residual commission, when read together with Exhibit B, Section III, the provisions function as a non-compete agreement with a forfeiture clause. The district court, however, erred when it failed to apply binding precedent on the unenforceability of disproportionate forfeiture clauses and overbroad non-compete agreements.

### 2. Disproportionate Forfeiture

Minnesota courts recognize the principle that forfeiture clauses in contracts are not favored in either law or equity. *Naftalin v. John Wood Co.*, 263 Minn. 135, 147, 116 N.W.2d 91, 100 (1962).

> Whenever reasonably possible, a construction against a forfeiture will be adopted. To this end, a contract will be construed not to provide for a forfeiture unless there is a clear expression or manifestation of the intent of the parties in this respect; and, where the contract does so provide, the provision will be strictly construed.

*Id.* at 147-48, 116 N.W.2d at 100.

The district court concluded that Exhibit B, Section III, and Paragraph 11 of the contract are a clear expression of the parties' intent with respect to forfeiture upon a failure to return property at the end of Capistrant's employment. However, under *Naftalin*, the "[o]ne claiming forfeiture carries a heavy burden of establishing his right thereto by clear and unmistakable proof." *Id.* at 148, 116 N.W.2d at 100; *see Harris v. Bolin*, 310 Minn. 391, 393, 247 N.W.2d 600, 602 (1976) (determining that those claiming forfeiture must show that the equities are on their side).

The contract in this case does not provide such clear and unmistakable proof of the parties' intent with respect to forfeiture. Exhibit B, Section III, requires Capistrant to have "duly performed all ... obligations under the Agreement" for six years prior to the end of the contract. Capistrant's non-compete and confidentiality duties were enumerated under Paragraph 11, clauses A through C. They required Capistrant to (A) not disclose Lifetouch's confidential information to any third party, (B) not solicit business from Lifetouch's customers, and (C) not solicit any of Lifetouch's employees. The obligation to return property at the termination of the contract is left in a hanging provision at the end of Paragraph 11. The provision containing the forfeiture clause provides that, in consideration for the residual commission, the provisions of Paragraph 11 (which contain Capistrant's ongoing duty to not compete as well as the hanging provision about returning property) will extend into the period when Capistrant is entitled to receive his residual-

---

4. Capistrant argues that the district court erred in determining there was a condition precedent in the contract. Capistrant points to the contract language under Exhibit B, Section III, which states, "If at any time Territory Manager breaches the provisions of Paragraph 11 ... Lifetouch shall be entitled to terminate Lifetouch's obligation to make any payments of Residual Commission." But the applicable language in Exhibit B, Section III, provides that *if* Capistrant duly performed all of his obligations under the contract (the triggering fact or event), *then* Lifetouch "shall pay" Capistrant a residual commission (duty which arises). This clause creates a condition precedent, requiring Capistrant to perform his contractual obligations before Lifetouch's duty to pay the residual commission arises.

commission payments. But, due to the fact that the language in Exhibit B, Section III, requires Capistrant to duly perform his obligations under the contract for the prior six years, and during the period he would receive his residual commission, a more reasonable reading of the contract is that it is referring to those ongoing obligations in clauses A through C under Paragraph 11. Because returning property is a one-time event, it is unclear how Capistrant would comply with a return-of-property clause for the prior 6 years, or for the ongoing period that he received his residual commission.

Additionally, the forfeiture clause allowed Lifetouch to terminate its obligations to make payments on the residual commission if Capistrant "breache[d]" the provisions of Paragraph 11. The use of the word "breach" does not evince an intent of the parties to form a strict forfeiture clause, because even when express conditions of a contract are violated, the breach is not necessarily material. *BOB Acres, LLC v. Schumacher Farms, LLC,* 797 N.W.2d 723, 728-29 (Minn.App. 2011), *review granted* (Minn. June 14, 2011) *and appeal dismissed* (Minn. Aug. 12, 2011). Only a material breach of a contract will justify the non-breaching party's refusal to perform. *Heyn v. Braun,* 239 Minn. 496, 501, 59 N.W.2d 326, 330 (1953).

Specifically addressing the non-occurrence of a condition precedent resulting in forfeiture, the Restatement (Second) of Contracts provides, "[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." Restatement (Second) of Contracts § 229 (1981).[5] Comment b to section 229 states:

> In determining whether the forfeiture is 'disproportionate,' a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture.

Restatement (Second) of Contracts § 229 cmt. b (1981).

> Furthermore, comment c states:

> It is not enough that the actual non-occurrence happened to involve a departure that was not a material part of the agreed exchange, if the occurrence of the condition was a material part of that exchange....

> A court need not excuse entirely the non-occurrence of the condition, but may merely excuse its non-occurrence *during the period of time in which it would otherwise have to occur* ... if it concludes that the time of its occurrence is not a material part of the agreed exchange.

Restatement (Second) of Contracts § 229 cmt. c (1981) (emphasis added).

Lifetouch argues that the return-of-property clause was a material part of the

---

5. "Restatements of the law are persuasive authority only and are not binding unless specifically adopted in Minnesota by statute or case law." *Williamson v. Guentzel,* 584 N.W.2d 20, 24 (Minn.App. 1998). The Minnesota Supreme Court has not adopted section 229 of the Restatement (Second) of Contracts regarding excuse of a condition that leads to disproportionate forfeiture. The Eighth Circuit Court of Appeals "[a]ssum[ed], without deciding, that Minnesota courts would apply the doctrine of disproportionate forfeiture to the non-occurrence of conditions precedent." *enXco Dev. Corp. v. N. States Power Co.,* 758 F.3d 940, 946 (8th Cir. 2014). We find section 229 of the Restatement (Second) of Contracts persuasive.

agreed exchange and that section 229 of the Restatement does not apply to this case. Lifetouch points to the first paragraph in comment c of section 229, arguing that it is not enough for Capistrant to show that his failure to return property involved a non-material departure from the contract when the occurrence of the condition was a material part of the exchange. However, the second paragraph of comment c is more applicable because the time of occurrence of the condition is at issue in this case, as Capistrant eventually returned the property in question.

Under the same reasoning that we used to determine that the contract does not provide "clear and unmistakable proof" of the parties' intent with respect to the forfeiture, we also conclude that the "immediate" time frame of the occurrence of the return of property was not a material part of the agreed exchange.

 We next must determine if the forfeiture is "disproportionate." Under the Restatement's test in section 229, comment b, the "extent of the forfeiture" by Capistrant is large—potentially $2.6 million. But, the risk from which Lifetouch sought to be protected—disclosure of confidential information to third parties—is also substantial. The degree to which that protection would be lost if the non-occurrence of the condition is excused, though, is minimal because Lifetouch was protected under a separate confidentiality clause under clause A of Paragraph 11, which would have caused forfeiture and prevented Capistrant from using the documents that he failed to immediately return. Lifetouch was also adequately protected without the word "immediately" in the return-of-property clause because, under Paragraph 11

of the contract, Lifetouch could seek an injunction and "any other remedy allowed to it in law."

Like the district court, Lifetouch relies on cases involving general contract law that stand for the proposition that, regardless of the materiality, unfulfilled conditions prevent enforcement of a contract. See Crossroads, 800 N.W.2d at 615 ("Under general contract law, unfulfilled conditions prevent enforcement of a contract."); Nat'l City Bank of Minneapolis, 447 N.W.2d at 178 ("[N]o legal principle permits violation of a contract condition to be completely ignored."). Both Lifetouch and the district court rely on an Eighth Circuit case interpreting Arkansas law, holding that a condition precedent is "unlike a mere contract term, the breach of which must be material before it excuses another party from performing." AIG Centennial Ins. Co. v. Fraley-Landers, 450 F.3d 761, 763 (8th Cir. 2006). Instead, "one party's failure to fulfill a condition precedent entirely excuses any remaining obligations of the other party." Id. The district court also found persuasive another Eighth Circuit case holding that under Missouri law an employer's obligation under a separation agreement was excused once the departing employee failed to fulfill the agreement's condition precedent by refusing for two years to return a company laptop. St. Louis Produce Mkt. v. Hughes, 735 F.3d 829, 831-32 (8th Cir. 2013).

These cases, though, do not accurately reflect Minnesota's more flexible approach to conditions precedent that result in disproportionate forfeitures—an approach in accord with section 229 of the Restatement (Second) of Contracts.[6]

6. Additionally, St. Louis Produce Mkt. is distinguishable on a factual basis as the employee in that case altered his employment agreement and presented it to his employer to sign without notifying the employer of the changes, failed to return a company laptop after two years, and committed discovery violations. 735 F.3d at 831-33.

Similar to *Naftalin*, 263 Minn. at 147, 116 N.W.2d at 100, this court in *Hideaway, Inc. v. Gambit Invs. Inc.*, stated:

It is well established that forfeitures ... will not be enforced when great injustice would be done and when the one seeking the forfeiture is adequately protected without the forfeiture. Furthermore, contracts should be construed as to avoid a forfeiture. Finally, the forfeiture of a right of action through the operation of a condition ..., as in this case, will be enforced only where the right to such forfeiture is plain.

386 N.W.2d 822, 824 (Minn.App. 1986) (citations omitted). In *Hideaway*, this court reversed a district court ruling that a property buyer could retain a business worth $13,000, despite paying the seller only $500, after the seller trespassed on the property. *Id.* at 824-25. The district court construed the contract to condition the buyer's agreement to pay for the property upon the seller not trespassing on the property. *Id.* at 824. In reversing, this court concluded that, because the contract did not contain language stating that the seller forfeits his right to future payments if he trespasses, such construction would be unjust as it resulted in a disproportionate forfeiture and the buyer was adequately protected without the forfeiture. *Id.* at 825.

Here, a forfeiture of potentially $2.6 million for retaining proprietary documents and e-mails, when there is no evidence of an intent to compete and when it is undisputed that there is no evidence of any dissemination of any of the retained documents, also constitutes an injustice and a disproportionate forfeiture. As discussed above, the timing of the return of property was not a material part of the bargained exchange, and the contract language does not contain clear and unmistakable proof that failing to return the property immedi-

ately would result in forfeiture of potentially millions of dollars. Finally, similar to *Hideaway*, Lifetouch was adequately protected by the contract. For example, here, a violation of clause A of the non-compete agreement requiring confidentiality would have triggered forfeiture of the residual commission.

Finally, Capistrant relies on *Trollen v. Wabasha*, 287 N.W.2d 645, 647 (Minn. 1979), in which the Minnesota Supreme Court interpreted a lease-extension notice requirement as a condition precedent. In *Trollen*, the supreme court adopted the rule that "permits a court of equity to relieve against the loss of an option to extend a lease where there has been excusable and inconsequential tardiness." *Id.* at 647. The supreme court ruled that a tenant "failing to fulfill a condition precedent of a lease" will be relieved in cases of neglect, but not in cases involving willful or grossly negligent conduct. *Id.* at 648 (quotation omitted). The rule in *Trollen*, though, is limited to equitable considerations surrounding a failure to give notice to extend a lease. *Id.* Disproportionate forfeitures are disfavored not only in equity, but also in law. *Naftalin*, 263 Minn. at 147, 116 N.W.2d at 100.

In sum, we determine as a matter of law that the forfeiture in this case is disproportionate, because (1) timing of the return of property was not a material part of the contract, (2) the contract's language did not provide clear and unmistakable proof of Lifetouch's right to forfeit, (3) the three-month delay in returning the property caused no harm, and (4) Lifetouch was adequately protected by other provisions in the non-compete agreement.

### 3. Restrictive Covenant Not to Compete

 The district court also erred by not considering whether the forfeiture

clause was a part of an overbroad restrictive covenant to not compete.

Restrictive covenants not to compete "which are broader than necessary to protect the employer's legitimate interest are generally held to be invalid." *Bennett v. Storz Broad. Co.*, 270 Minn. 525, 534, 134 N.W.2d 892, 899 (1965). A restrictive covenant not to compete may be unenforceable if it is not limited "as to time, harm to the employer, or geographical area." *Harris*, 310 Minn. at 395, 247 N.W.2d at 603.

In *Harris*, the Minnesota Supreme Court considered a non-compete provision that forfeited vested contributions held in a trust as a part of an employee's profit-sharing plan if the employee left the company to work for a competitor. *Id.* at 392, 247 N.W.2d at 601-02. The court held that "[t]he forfeiture clause of the profit sharing plan and trust agreement constitute[d] an unlawful restraint of trade because it is not limited as to time, harm to the employer, or geographical area," and because it was "broader than necessary to protect the legitimate interests of the employer." *Id.* at 395, 247 N.W.2d at 603. The profit-sharing plan in *Harris* is like the residual-commission plan here because the plan is "not a gratuity but constitute[s] deferred compensation" that Capistrant could expect to receive upon retirement. *Id.* at 393, 247 N.W.2d at 602. Lifetouch territory managers like Capistrant worked solely on commission, and worked to expand their territory and profits to increase their residual commission when they retired or left Lifetouch.

As in *Harris*, the forfeiture clause in the non-compete agreement is overbroad because it allows the forfeiture of potentially $2.6 million of Capistrant's residual commission based on minimal harm to Lifetouch. The record here shows that Capistrant held Lifetouch property for about three months, from his last day on March 31, 2015, until it was returned to Lifetouch as a part of discovery on July 1, 2015. Computer forensics completed on Capistrant's electronic devices revealed no evidence that he shared any documents or e-mails containing Lifetouch property with third parties. Further, Lifetouch's conduct before this litigation did not demonstrate a strong concern with employees retaining documents. Lifetouch did not ask for documents that Capistrant might have retained at home. It had no procedure for requesting such documents on an employee's last day. Capistrant was not supervised while he forwarded e-mails on his last day. The property in question was not even an issue in this lawsuit until discovery revealed it.

We recognize that Lifetouch has an interest in not having proprietary information out of its control after an employee departs. Capistrant's action of forwarding documents containing Lifetouch's proprietary information to his personal e-mail account on his last day of employment is troubling. Lifetouch suffered some harm as it needed to hire a computer forensic expert to determine that Capistrant had not shared the documents he retained. But, Lifetouch's interests in its trade secrets and confidential proprietary information are adequately protected under other provisions of the non-compete agreement. Clause A in Paragraph 11 prevents Capistrant from transferring trade secrets or confidential information to any third party for any reason, and clause B in the same paragraph prevents Capistrant from doing business with Lifetouch's customers. Any violation of these clauses would result in forfeiture.

In sum, because the forfeiture clause in the non-compete agreement of the contract allows a complete forfeiture of Capistrant's residual commission based on de minimis harm to Lifetouch, and because Lifetouch

was adequately protected under other provisions in the contract, the forfeiture clause in the non-compete agreement is unenforceable to the extent that it was applied in this case.

## C. Construction to Avoid Forfeiture

Capistrant argues that this court should construe the contract to require a material breach in performance before Lifetouch would have a right to forfeit Capistrant's residual commission. In the alternative, Capistrant argues that to avoid forfeiture, we should find the term "immediately" ambiguous, and determine that, in the context of this case, Capistrant's return of Lifetouch's property after about three months was immediate.

While we decline to stretch the meaning of the word "immediately," we agree that the contract may be construed to require a "material breach." The wording of the forfeiture clause states that if Capistrant "breaches the provisions of Paragraph 11," Lifetouch is entitled to terminate its obligation to pay the residual commission. Because we conclude that the immediate time frame of the return-of-property clause was not a material term in the contract, failure to return the property immediately would not constitute a material breach excusing Lifetouch from performing. *See Heyn*, 239 Minn. at 501, 59 N.W.2d at 330 (holding only a material breach of a contract will justify the non-breaching parties' refusal to perform).

An alternative construction is not required, though, because Minnesota caselaw and the Restatement (Second) of Contracts provide that the non-occurrence of a condition precedent may be excused if it results in a disproportionate forfeiture. *Hideaway, Inc.*, 386 N.W.2d at 824 (stating it is well established that forfeitures will not be enforced when great injustice would be done); Restatement (Second) of

Contracts § 229 cmt. c (1981) (providing a court may excuse the non-occurrence of a condition precedent during the period of time in which it would otherwise have to occur if it concludes that the time of its occurrence is not a material part of the agreed exchange).

Because the time of the occurrence of the return of property is not a material part of the contract, we excuse Capistrant's failure to return Lifetouch's property during the period in which it should have otherwise occurred in order to avoid a disproportionate forfeiture. Additionally, while we are troubled by the fact that Capistrant forwarded Lifetouch's proprietary information to his personal e-mail account, because clauses A through C under Paragraph 11 were the material provisions under the non-compete agreement, Capistrant's delay in informing Lifetouch that he forwarded documents to his personal e-mail account was not a material breach resulting in forfeiture.

## III. Calculation of the Residual Commission

Finally, Capistrant invites this court to determine the correct method of calculating the residual commission, arguing that the plain language of the contract does not allow Lifetouch to subtract transferred business when calculating the residual commission. Capistrant argues that the district court erred in not addressing this issue. Appellate court review is limited to those issues decided by the lower court. *Jorgensen v. Knutson*, 662 N.W.2d 893, 904 (Minn. 2003). Review is not appropriate "even though the question was raised below, if it was not passed on by the trial court." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Here, the district court did not address the calculation issue because it ruled Lifetouch had no duty to pay Capistrant the residual commission. Ac-

cordingly, we remand this case to the district court so that it can determine the correct method of calculating Capistrant's residual commission.

### DECISION

The district court did not err in determining there were no genuine issues of material fact as to whether Capistrant immediately returned Lifetouch's property. However, because the timing of the occurrence of the condition precedent of returning Lifetouch's property was not a material term of the contract, we excuse the non-occurrence of the condition for the approximately three-month period in order to avoid a forfeiture of Capistrant's residual commission that is disproportionate to any harm to Lifetouch. Accordingly, we reverse the district court's grant of summary judgment, and remand for the district court to determine the correct method of calculating Capistrant's residual commission.

**Reversed and remanded.**