GILDEA, Chief Justice.
We are asked to decide whether a former employee's delay in returning his employer's property excuses the employer from paying a commission otherwise due to the employee. Respondent John J. Capistrant argues that he was due the commission when his employment relationship with appellant Lifetouch National School Studios, Inc. ("Lifetouch") ended. Lifetouch contends that because Capistrant did not return Lifetouch's property immediately upon leaving the company, Lifetouch is excused from paying the commission.
The district court agreed with Lifetouch, determining that the return-of-property clause in the employment contract between the parties was a condition precedent to Lifetouch's contractual obligation to pay the residual commission, and that Capistrant's failure to comply with the clause excused Lifetouch's obligation to pay that commission. The court of appeals reversed, applying Restatement (Second) of Contracts § 229 (Am. Law Inst. 1981), and concluding, as a matter of law, that the loss of the commission was a disproportionate forfeiture for Capistrant's failure to comply with the return-of-property clause in the employment contract. We agree with the court of appeals that in the circumstances of this case, the guidance provided by section 229 of the Restatement is consistent with our precedent that disfavors forfeitures. But we disagree with the court of appeals that the materiality and proportionality analysis contemplated by section 229 can be decided as a matter of law on this record. We therefore reverse the court of appeals in part, affirm in part, and remand to the district court for further proceedings.
FACTS
Lifetouch sells photography services to schools and other organizations across the nation. In 1980, Capistrant began working as a photographer and sales representative *25 for Lifetouch in its Minneapolis office. In 1981, Capistrant transferred within the company to the California office. Capistrant took over as Territory Manager of the San Francisco Bay Area in 1986 and entered into the contract with Lifetouch that is at issue in this appeal. The pertinent portions of the contract for our purposes include Paragraphs 8 and 11, and Exhibit B.
The contract provides that Capistrant would manage certain territory. In exchange for his management, Paragraph 8 provides that he would be compensated as described in exhibits attached to the agreement. One of those exhibits, Exhibit B, clarifies that Lifetouch would compensate Capistrant entirely with "commissions."
Section III of Exhibit B, entitled "Residual Commission and Payments For Restriction Against Competition," explains Capistrant's right to, and the calculation of, a post-employment "residual commission." This paragraph also specifically makes reference to Paragraph 11 of the contract, acknowledging that "the provisions of Paragraph 11 of the Agreement shall be extended and shall apply during the period Territory Manager is entitled to receive Residual Commission payments." The parties also agreed that if, "at any time," Capistrant "breaches the provisions of Paragraph 11 of the Agreement, in addition to Lifetouch's other remedies, Lifetouch shall be entitled to terminate Lifetouch's obligation to make any payments of Residual Commission that have not yet been paid by giving Territory Manager written notice of such termination."
Under Paragraph 11, entitled "Restriction Against Competition," Capistrant agreed for a period of 24 months after his employment that he would not "[d]isclose any trade secrets and confidential information," "solicit or deal with any school included in Lifetouch's Business," or "solicit any present or future employee of Lifetouch for the purpose of hiring or attempting to hire such employee." A separate clause at the end of Paragraph 11 additionally provides that Capistrant would "immediately deliver to Lifetouch all of Lifetouch's property" that was in Capistrant's possession or control at the end of his employment. We refer to this last clause of Paragraph 11 as "the return-of-property clause."
The present dispute stems from a disagreement between Capistrant and Lifetouch about the interpretation of the residual commission provision described in Exhibit B. Over the years, Capistrant and Lifetouch disagreed about how his commissions, including the residual commission, were or would be calculated. The disputes arose as Lifetouch expanded Capistrant's territory or asked Capistrant to execute new agreements regarding his commissions. Capistrant refused to sign a new agreement.
By 2014, Capistrant was planning for retirement, and some of these past disputes remained unresolved. In September of 2014, Capistrant commenced a declaratory-judgment action in district court requesting a declaration of the parties' respective rights and duties under the employment contract, including the proper calculation of the residual commission he was to be paid under the contract.
In March of 2015, while this litigation was still in the discovery phase, Capistrant retired. Three months later, in response to Lifetouch's discovery requests, Capistrant's counsel disclosed that Capistrant had in his possession a large number of Lifetouch's documents, including customer lists, sales data, payroll records, financial *26 statements, and business plans that he had kept after his retirement.[1]
On June 26, 2015, Lifetouch demanded that Capistrant return the documents he had retained. Capistrant returned the documents within three business days of this request.
On August 4, 2015, Lifetouch also demanded that Capistrant give it access to his e-mail account; Capistrant complied. Lifetouch's forensic expert then determined from a review of electronic files that the Lifetouch materials Capistrant had sent to his personal e-mail account had not been shared with outside sources.
In January of 2016, the parties each moved for summary judgment on the issue of Capistrant's right to a residual commission. Capistrant asserted in his motion that he is entitled to summary judgment against Lifetouch because it is contractually obligated to pay him a residual commission. Lifetouch argued in its motion that its obligation to pay the residual commission was excused because Capistrant failed to comply with the return-of-property clause.
The district court concluded that the return-of-property clause was a condition precedent to Lifetouch's payment of the residual commission. The court rejected Capistrant's argument that the court should not enforce the condition because to do so would result in an inequitable forfeiture. Specifically, the court concluded that the language of the contract is "clear," and "[e]quity cannot rescue [Capistrant] from his contractual obligations." The court granted summary judgment to Lifetouch on this issue, holding that Capistrant was not entitled to the residual commission under Exhibit B, Section III because he failed to satisfy his obligations under the return-of-property clause.
Capistrant appealed, and the court of appeals reversed. Capistrant v. Lifetouch Nat'l Sch. Studios, Inc. , 899 N.W.2d 844 (Minn.App. 2017). The court of appeals concluded that the district court did not err in considering the return-of-property clause as a "condition precedent to Lifetouch's duty to pay [Capistrant] his residual commission." Id. at 854. But the court of appeals determined that the district court did err in failing to recognize that, read as a whole, the non-compete provisions and the residual commission provision "function as a non-compete agreement with a forfeiture clause." Id. And the court of appeals also determined that the district court erred in not applying "binding precedent on the unenforceability of disproportionate forfeiture clauses and overbroad non-compete agreements." Id.
The court of appeals turned to section 229 of the Restatement (Second) of Contracts, and held that the "the timing of the return of property was not a material part of the contract" and "a forfeiture of potentially $2.6 million for retaining proprietary documents and e-mails, when there is no evidence of an intent to compete and when it is undisputed that there is no evidence of any dissemination of the retained documents" would cause a disproportionate forfeiture. 899 N.W.2d at 857. The court of appeals therefore concluded that Capistrant's failure to immediately return Lifetouch's property was excused as a matter of law. Id. at 859-60. We granted Lifetouch's petition for review.[2]
*27 ANALYSIS
This case comes to us after the district court granted Lifetouch's motion for summary judgment. On appeal from summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law to the facts. Commerce Bank v. W. Bend Mut. Ins. Co. , 870 N.W.2d 770, 773 (Minn. 2015). Lifetouch contends that Capistrant's knowing failure to immediately return Lifetouch's property at the end of his employment relieves Lifetouch of its contractual obligation to pay the residual commission to Capistrant. Specifically, Lifetouch asserts that the return-of-property clause operates as an absolute precondition to its duty to pay the residual commission. Capistrant argues that his immediate return of Lifetouch's property was not a material term of the contract, and thus any breach cannot excuse Lifetouch's performance. The court of appeals agreed with Capistrant, holding that "immediate" compliance with the return-of-property clause was not a material term of the parties' contract, and thus Capistrant's non-compliance could be excused. 899 N.W.2d at 860. Both the court of appeals and the district court concluded that the return-of-property clause "created a condition precedent to Lifetouch's duty to pay Capistrant any residual commission." 899 N.W.2d at 853.
A condition precedent is a contract term that "calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which [the promisor's] obligation is made to depend." Lake Co. v. Molan , 269 Minn. 490, 131 N.W.2d 734, 740 (1964) (citation omitted) (internal quotation marks omitted); see also Carl Bolander & Sons, Inc. v. United Stockyards Corp. , 298 Minn. 428, 215 N.W.2d 473, 476 (1974) (explaining that a condition precedent is a fact that must occur before the promisor is obligated to perform). We have said that "if the event required by the condition does not occur, there [is] no breach of contract." 451 Corp. v. Pension Sys. for Policemen & Firemen , 310 N.W.2d 922, 924 (Minn. 1981) ; see also Crossroads Church of Prior Lake MN v. Cty. of Dakota , 800 N.W.2d 608, 616 (Minn. 2011) (explaining that several conditions of the parties' oral contract were "unfulfilled," and thus performance under the contract was not required); Nat'l City Bank v. St. Paul Fire & Marine Ins. Co. , 447 N.W.2d 171, 178 (Minn. 1989) ("[N]o legal principle permits violation of a contract condition to be completely ignored."). Our precedent reflects the "general rule" that "conditions ... must be *28 literally met or exactly fulfilled, or no liability can arise on the promise qualified by the condition." 13 Richard A. Lord, Williston on Contracts § 38.6 (4th ed. 2013). But we have never explicitly decided whether the breach of a condition precedent must be material in order to relieve the non-breaching party of its obligation under the contract.
Lifetouch, citing to the general rule regarding conditions precedent, contends that conditions precedent are always material, and so the court of appeals erred in excusing Capistrant's failure to perform the material condition of returning Lifetouch's property immediately upon his retirement. But the return-of-property clause at issue here operates differently than the conditions at issue in our cases applying the general rule. Here, the parties had been performing under the contract for 28 years before the condition became operative, and the condition came into play only as the parties' employment relationship was ending. Moreover, the consequence of failing to comply with the return-of-property clause would be the forfeiture of millions of dollars.
In this unique context, we agree with the court of appeals that guidance can be drawn from the Restatement. Section 229 provides: "To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless it was a material part of the agreed exchange." Restatement (Second) of Contracts § 229. Section 229 is consistent with our precedent regarding forfeitures.
We look with disfavor on forfeitures of all kinds, see Harris v. Bolin , 310 Minn. 391, 247 N.W.2d 600, 602 (1976) (discussing how covenants against competition with forfeitures attached are not favored and those claiming them must show the equities are on their side), and we will avoid forfeitures when reasonably possible to do so. Naftalin v. John Wood Co. , 263 Minn. 135, 116 N.W.2d 91, 100 (1962) ; Tomasko v. Cotton , 200 Minn. 69, 273 N.W. 628, 632 (1937) (explaining that we try to avoid forfeiture when reasonably possible); Warren v. Driscoll , 186 Minn. 1, 242 N.W. 346, 347 (1932) (stating a forfeiture cannot be enforced when "great injustice is done thereby and the one seeking a forfeiture is adequately protected without"). Because section 229 reflects our reluctance to enforce forfeitures, the court of appeals properly looked to it for guidance in resolving this case.[3]
*29 While we agree with the court of appeals that section 229 provides helpful guidance given the context presented here, we disagree with the court's conclusion "as a matter of law" that section 229 excuses Capistrant's failure to comply with the condition. Capistrant , 899 N.W.2d at 857. Section 229 consists of two prongs: (1) whether the occurrence of the condition was a material part of the agreed exchange and (2) a proportionality analysis that balances the risk to be protected with the amount to be forfeited. See Restatement (Second) of Contracts § 229, cmts. b-c (explaining that the rule applies "only where occurrence of the condition was not a material part of the agreed exchange" and requires weighing to determine "whether the forfeiture is 'disproportionate' "); see also Varel v. Banc One Capital Partners, Inc. , 55 F.3d 1016, 1018 (5th Cir. 1995) (discussing how courts applying the Restatement must examine "whether performing the condition precedent was the object of the contract or merely incidental to it" and then weigh whether the penalty is extreme when "measured against the purpose" of the condition). Application of the second prong (proportionality) depends on whether the first prong (materiality) is met. Restatement (Second) of Contracts § 229 cmt. c ("The rule of this Section applies only where occurrence of the condition was not a material part of the agreed exchange."). In other words, if the occurrence of the condition is a material part of the agreement, then the proportionality analysis is not applied and the forfeiture cannot be prevented. But if the condition is not material, then the court is to engage in the proportionality analysis.
With respect to the materiality prong, the court of appeals concluded, as a matter of law, that the "immediate" time frame of the occurrence of the return of property was not a material part of the agreed exchange. Capistrant , 899 N.W.2d at 859. Lifetouch contends that this determination was erroneous.
Lifetouch argues that the immediacy requirement was material because Lifetouch needed to prevent "its confidential, proprietary, and trade-secret information from passing out of its control" and the risk of that harm "begins immediately upon an employee's departure." Thus, Lifetouch contends, Capistrant's return of the property immediately upon his departure from the company was important so that Lifetouch continued to have exclusive control of its property and confidential information. Lifetouch points to the testimony of its Senior Vice President of Sales who explained that the documents Capistrant kept included information about Lifetouch's "selling methods" and "sales commission and profit performance." Such information, the Vice President said, could help Lifetouch's competitors "target our accounts" and give competitors "a hand up in ... competing with [Lifetouch]."
For his part, Capistrant argues that his retention of Lifetouch's property for a few months was a minor, temporary delay that should be excused as immaterial. Capistrant asserts that any delay in his return of the property was immaterial because materiality goes to the "very root or essence of the contract" and it is impossible to find a material difference between the return of Lifetouch's property on the day of his retirement as compared to a few months later. Accordingly, Capistrant argues, the court of appeals properly resolved the materiality question as a matter of law.[4]
We have resolved cases involving conditions precedent as a matter of law. See, *30 e.g. , Crossroads Church , 800 N.W.2d at 615 (affirming summary judgment and concluding that because the condition precedent was unfulfilled, the contract could not be enforced). But the record in this case does not allow resolution of the materiality question as matter of law. Specifically, the condition at issue-a post-employment return-of-property clause-is included in a provision that imposes ongoing noncompetition obligations on Capistrant after the employment relationship defined by the contract has ended.
Lifetouch cites St. Louis Produce Market v. Hughes , a case that also involved a condition precedent that arose at the end of the parties' employment relationship. 735 F.3d 829 (8th Cir. 2013). That contract provided that "[a]s a condition precedent to Company's obligations ... and prior to Company making any additional separation payments," the employee agreed to return the company's property. Id. at 831. Because the employee did not return the company's property, the Hughes court held that the company was relieved of its obligation to make additional payments to the employee. Id. at 832. In so holding, the court rejected the employee's argument that his nonperformance should be excused because it was immaterial. Id. ("Hughes is correct that one party's breach of a contract term must be material to excuse the other party's performance, but the failure to fulfill a condition precedent need not." (citation omitted)).
Hughes applies Missouri law. In addition, the case is not helpful here because the return-of-property clause is not as clearly tied to Lifetouch's performance as the condition was tied to the company's performance in Hughes . The return-of-property clause is included in Paragraph 11, a paragraph imposing continuing non-compete and non-disclosure obligations on Capistrant for years after his retirement. Yet, as the court of appeals recognized, the return-of-property clause "is a one-time event," and Lifetouch relies on the failure to comply with this one-time event-at least for a period of time-to forfeit the entire residual commission that would otherwise be paid during the entire period of non-disclosure and non-competition that Paragraph 11 encompasses.[5] Capistrant , 899 N.W.2d at 855.
Moreover, the materiality of the return-of-property clause to the residual *31 commission payments is subject to conflicting inferences. It could be that the return-of-property clause is material to Capistrant's receipt of any residual commission, as Lifetouch argues. After all, the condition is a stand-alone obligation in Paragraph 11, and in Exhibit B, Capistrant plainly agreed that if he "breaches the provisions of Paragraph 11," that breach "terminate[s]" Lifetouch's obligation to pay the residual commission.
On the other hand, and also consistent with Exhibit B, the amount of the residual commission is determined based on Capistrant's sales during his last year with Lifetouch. This part of the agreement supports an inference that Capistrant's right to the residual commission is independent of his obligation to return Lifetouch's property. And the fact that the return-of-property clause is contained in the "Restriction against Competition" paragraph reinforces the inference that the return of property was material only to Capistrant's noncompetition with Lifetouch. In other words, as long as Capistrant did not disclose or use Lifetouch's property to compete with Lifetouch, his retention of the property for some period of time may not be material to his receipt of the residual commission.
Given these conflicting inferences, we conclude that the materiality determination should not be resolved as a matter of law on appeal. This is especially true in this case because the district court did not make any findings on materiality. Accordingly, we conclude that a remand is necessary to allow the district court to resolve the materiality question in the first instance.
On the proportionality prong, the court of appeals also concluded, as a matter of law, that because the forfeiture was disproportionate, Lifetouch was not relieved of its obligation to pay the residual commission. We reverse this aspect of the court's decision as well because we have concluded that a remand on the materiality issue is necessary, and the proportionality prong is reached only after there is a conclusion on the materiality prong.
If the district court determines that the immediate return of property under the contract was not material, the district court then must turn to the proportionality prong of section 229 to determine if the forfeiture was disproportionate. Comment b to section 229 explains that "[t]he rule ... is, of necessity, a flexible one, and its application is within the sound discretion of the court." Restatement (Second) of Contracts § 229 cmt. b; see also Acme Markets, Inc. v. Fed. Armored Express, Inc. , 437 Pa.Super. 41, 648 A.2d 1218, 1222 (1994) (remanding for an evidentiary hearing where the district court "did not consider whether the forfeiture would be disproportionate, [or] decide if the [condition precedent] constituted a material part of the exchange" and requiring the court on remand to "engage in the necessary weighing analysis").
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals in part, reverse that decision in part, and remand to the district court for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
THISSEN, J., not having been a member at the time of submission, took no part in the consideration or decision of this case.

The record establishes that Capistrant returned his office keys and company laptop on the last day of his employment with Lifetouch. Capistrant alleged in the district court that a senior Lifetouch employee allowed him to forward electronic documents, including work e-mails, to a personal e-mail account on his last day. Lifetouch disputes this allegation.

We also granted Capistrant's request for cross-review on two issues. Based on our review of the record, we affirm the court of appeals on both of these issues. First, we reject Capistrant's argument that under a broad definition of "immediately," he complied with the return-of-property clause. We agree with the court of appeals that no definition of "immediately," as that term is used here and under the facts of this case, can encompass an almost three-month delay in the return of Lifetouch's property. See Capistrant , 899 N.W.2d at 851 (" 'Immediately' is an unambiguous term"). Second, we reject Capistrant's claim that Lifetouch's contractual right to terminate the payment of the residual commission is an illegal penalty. The illegal-penalty argument that Capistrant makes is grounded in our liquidated-damages jurisprudence. See Gorco Constr. Co. v. Stein , 256 Minn. 476, 99 N.W.2d 69, 75 (1959) (holding that a penalty is an agreed-to sum that is greatly disproportionate to the actual damages). This case is not about liquidated damages because Lifetouch does not contend that the residual commission amount forfeited by Capistrant's breach accurately represents the damages caused by Capistrant's failure to return its property. The liquidated-damages or penalty analysis therefore is not applicable to the forfeiture clause at issue in this case.

We do not need to decide here whether to adopt section 229 for all purposes. But many other jurisdiction have applied section 229. See Varel v. Banc One Capital Partners, Inc. , 55 F.3d 1016, 1018 (5th Cir. 1995) (citing to section 229 and explaining that Texas courts applying Texas law excuse non-performance of a condition precedent if the condition's requirement will involve extreme forfeiture or penalty and its existence or occurrence forms no essential part of the exchange); In re Wade , 392 B.R. 302, 307 (E.D. Mich. 2008) (concluding that because the condition was a material part of the contract the doctrine of disproportionate forfeiture could not excuse the non-occurrence of the condition); Prince George's Cty. v. Local Gov't Ins. Tr. , 388 Md. 162, 879 A.2d 81, 96 (2005) (explaining that section 229 may be applied to prevent disproportionate forfeiture); Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co. , 86 N.Y.2d 685, 636 N.Y.S.2d 734, 660 N.E.2d 415, 418 (1995) (discussing how section 229 may be applied to excuse the non-occurrence of a condition based on disproportionate forfeiture); Acme Markets, Inc. v. Fed. Armored Express, Inc. , 437 Pa.Super. 41, 648 A.2d 1218, 1221-22 (1994) (discussing how the trial court erroneously believed its analysis ended upon concluding that the condition was not met, instead of continuing in the analysis by applying section 229 to determine if the non-occurrence of the condition may be excused); Kilcullen v. Calbom & Schwab, P.S.C. , 177 Wash.App. 195, 312 P.3d 60, 64 (2013) (discussing how a trial court has the authority to excuse a condition where enforcing the condition would cause disproportionate forfeiture).

Capistrant additionally asserts, separate from his section 229 argument, that Minnesota case law supports his assertion that immaterial delays are excused to the extent necessary to prevent forfeiture, citing Trollen v. City of Wabasha , 287 N.W.2d 645, 648 (Minn. 1979) and Jostens, Inc. v. CNA Ins./Cont'l Cas. Co. , 403 N.W.2d 625, 629 (Minn. 1987), overruled in part by N. States Power Co. v. Fidelity & Cas. Co. of N.Y. , 523 N.W.2d 657 (Minn. 1994). Lifetouch contends that these cases do not extend past the realm of immaterial delays in giving notice and that these principles have never been applied to substantive duties. In Jostens , we excused the failure to give timely notice of an insurance claim. 403 N.W.2d at 629. In Trollen , we excused the immaterial delay in giving a renewal notice under a lease. 287 N.W.2d at 648. We have not relied on Jostens outside of the insurance context and have not relied on Trollen outside of the real property context. We decline to import forfeiture principles from these notice cases into the context of the contractual employment relationship at issue here.

Relying on Harris v. Bolin , Capistrant argues that the return-of-property clause should not be enforced because it is part of a restrictive covenant. In Harris , we concluded that a forfeiture clause in a profit sharing plan and trust agreement constituted "an unlawful restraint of trade because it is not limited as to time, harm to the employer, or geographical area." 247 N.W.2d at 603. Unlike the agreement in Harris , however, the non-compete provision in Capistrant's agreement is limited in duration and other than prohibiting Capistrant from soliciting customers or employees of Lifetouch during the restrictive period, the provision did not restrict Capistrant's ability to work elsewhere or for a competitor of Lifetouch. We therefore conclude that even if the return-of-property clause was part of the non-compete, it would not be overbroad based on Harris .